982 F.2d 577
 142 L.R.R.M. (BNA) 2506, 299 U.S.App.D.C. 189
 U.S. DEPARTMENT OF DEFENSE, National Guard Bureau, Rhode
Island National Guard, Rhode Island, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
Association of Civilian Technicians, Intervenor.
 No. 91-1090.
 United States Court of Appeals, District of Columbia Circuit.
 Argued Oct. 23, 1992.
Decided Jan. 15, 1993.
 
 Petition for Review from, and Cross-Application for Enforcement of, a Final Order of the Federal Labor Relations Authority.
 Katherine S. Gruenheck, Attorney, Dept. of Justice, argued the cause, for petitioner. With her on the briefs were Stuart M. Gerson, Asst. Atty. Gen., and Robert V. Zener, Attorney, Department of Justice. William Kanter, Attorney, Dept. of Justice, entered an appearance, for petitioner.
 Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, argued the cause, for respondent. With him on the brief were William E. Persina, Sol., William R. Tobey, Deputy Sol., and James F. Blandford, Attorney, Federal Labor Relations Authority.
 Samuel L. Spear entered an appearance for intervenor Ass'n of Civilian Technicians.
 Before WALD, SENTELLE, and RANDOLPH, Circuit Judges.
 Opinion for the court filed by Circuit Judge RANDOLPH.
 RANDOLPH, Circuit Judge:
 
 
 1
 The National Guard has the dual mission of serving both the state in which the Guard unit is located and the federal government. The Guard stands ready to preserve peace and order at the command of state authorities; and to provide combat-ready units and to control domestic violence at the President's direction. See Perpich v. Department of Defense, 496 U.S. 334, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990). Because the National Guard is not a full-time active force, it employs civilian "technicians" to perform administrative, clerical, and technical tasks. These individuals are generally required to be members of the National Guard unit in which they are employed (32 U.S.C. § 709(b)), and must wear their military uniforms while they are working. See National Guard Bureau Technician Personnel Reg. No. 300, p 7-6 (1987); New York Council, Ass'n of Civilian Technicians v. FLRA, 757 F.2d 502, 505-06 (2d Cir.1985). As federal "employees" (5 U.S.C. § 2105(a); 32 U.S.C. § 709(d)), the Guard's civilian technicians are entitled to engage in collective bargaining regarding certain subjects. 5 U.S.C. §§ 7102, 7103(a)(2) & (a)(3); American Fed'n of Gov't Employees, Local 2953 v. FLRA, 730 F.2d 1534 (D.C.Cir.1984). The primary issue in this case is whether the number of military uniforms provided to technicians free-of-charge is one of those subjects.
 
 
 2
 The Rhode Island National Guard, one of 54 in the nation, employs some 300 technicians with corresponding military status in either the Army or Air Force. The technicians' union submitted several proposals for negotiation. The Guard refused to bargain about some of these, including a proposal containing the following subparts (rearranged and lettered for convenient reference):
 
 
 3
 [A] The Employer will provide seven (7) sets of uniforms which are required to be worn in each functional work area, to all Bargaining Unit Personnel. The Employer will provide a direct exchange program for worn, torn, or clothing soiled too badly to be rendered clean and presentable in the performance of day to day duties.
 
 
 4
 [B] Uniforms issued to full time bargaining unit employee's [sic] shall be seperate [sic] and in addition to those issued to all Guards [sic] persons.
 
 
 5
 [C] All uniforms will be worn as issued by the employer to the bargaining unit employee's [sic].
 
 
 6
 If the union's proposal were accepted, each technician working for the Rhode Island National Guard would wind up with eleven sets of uniforms--seven as a result of a collective bargaining agreement, four as a result of an initial clothing allowance.[1]
 
 
 7
 On the union's appeal, see 5 U.S.C. §§ 7105(a)(2)(E), 7117(c), the Federal Labor Relations Authority treated the three items as one proposal and found it to be a proper subject for mandatory bargaining. Association of Civilian Technicians & United States Dep't of Defense, 38 F.L.R.A. 1005 (1990). The Guard filed a petition for judicial review; the FLRA filed a cross-petition for enforcement; and we granted the union's motion to intervene.[2]
 
 
 8
 When we review FLRA decisions, our initial task is to determine what arguments are properly before us. The statute governing judicial review states: "No objection that has not been urged before the Authority ... shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances." 5 U.S.C. § 7123(c). The Guard's brief contains several elaborate arguments, relying on statutes and regulations, but there is real doubt whether the Guard presented all of these arguments to the FLRA. For their part, the FLRA's attorneys are content to meet the Guard's arguments head on; nothing in their brief hints that we are precluded from passing on the Guard's contentions. While the FLRA's silence might be equated with a waiver of the § 7123(c) bar or, perhaps, an "extraordinary" circumstance, the Supreme Court saw things differently in EEOC v. FLRA, 476 U.S. 19, 23, 106 S.Ct. 1678, 1681, 90 L.Ed.2d 19 (1986) (per curiam). Section 7123(c), the Court held, "is not 'waived' simply because the FLRA fails to invoke it." 476 U.S. at 23, 106 S.Ct. at 1681. Since § 7123(c) is addressed to "courts, not parties," id., we must satisfy ourselves that the Guard's objections to the FLRA's ruling were placed before the agency.
 
 
 9
 The Guard's presentation to the FLRA was not extensive. It consisted of a two-page, single-spaced letter. With respect to subparts A and B of the proposal, the Guard said only this:
 
 
 10
 Union proposals [A] and [B] provide for the supplying of military uniforms to military technicians and an exchange program for worn clothing. Military uniforms are provided free of charge to technicians in sufficient numbers as provided for by military regulation. Technicians are issued their uniforms as military members of the National Guard. Consequently, the issuance of the uniforms, in specified quantities is controlled by military policy and regulation, and since the wear of the military uniform is a matter local management has chosen not to bargain, the proposals are not bargainable, as they relate to matters that are negotiable at the election of management.
 
 
 11
 Under the Federal Service Labor-Management Relations Statute, the duty to bargain over "conditions of employment" does not extend to matters that are the subject of a regulation unless there is no "compelling need" for the regulation (5 U.S.C. § 7117(a)); and "conditions of employment" do not include matters "specifically provided for by Federal statute." 5 U.S.C. § 7103(a)(14)(C). Did the Guard mean to say that because "military policy and regulation" covered the issuance of uniforms to technicians, § 7117(a) rendered the number of free uniforms to be supplied a nonnegotiable subject? What "policy" and what "regulation"? The Guard provided no citations, yet the FLRA's rules required it to do so if this were what the Guard had in mind. 5 C.F.R. § 2424.6(a)(2). At any rate, even before this court, the Guard does not advance any arguments on the basis of § 7117(a).
 
 
 12
 Did the Guard mean to invoke the exemption in § 7103(a)(14)(C) for matters specifically covered by statute? In this court the Guard spins out a § 7103(a)(14)(C) argument on the basis of the Pay and Allowances of the Uniformed Services Act, Pub.L. No. 87-649, § 418, 76 Stat. 451, 478 (1962), codified at 37 U.S.C. § 418, which provides:
 
 
 13
 The President may prescribe the quantity and kind of clothing to be furnished annually to an enlisted member of the armed forces or the National Guard, and may prescribe the amount of a cash allowance to be paid to such a member if clothing is not so furnished to him.
 
 
 14
 The Guard never told the FLRA of this objection to negotiability and the FLRA, in its written opinion, said nothing on the subject. It is not enough that the Guard's letter to the FLRA referred to "military policy" concerning the number of uniforms issued to Guard members. Section 7103(a)(14)(C) demands a statute, not a policy. Objections resting on § 7103(a)(14)(C) must, at a minimum, cite the statute and explain why it removes the proposal from mandatory bargaining. Presentations to courts on petitions for review may, and commonly do, expand upon the rationale underlying arguments made before agencies. But it is still the agency's judgment the court must review and one cannot expect that judgment to be forthcoming in the face of an imprecise or incoherent objection. The Guard's current argument about 37 U.S.C. § 418, made for the first time in this court, may not be considered.
 
 
 15
 The FLRA apparently thought the Guard's letter embodied another contention--namely, that because the technicians' wearing of uniforms is not a subject of mandatory bargaining, the number of free uniforms provided to technicians should be in the same category. This is a fair reading, indeed the only reading that makes sense of the Guard's reference to "the wear of the military uniform" as "a matter local management has chosen not to bargain." The FLRA also generously translated the Guard's statement into a claim that the union's proposal, in its three subparts, was exempt from mandatory bargaining as a "method and means" of performing work under 5 U.S.C. § 7106(b)(1), presumably because § 7106(b)(1) is the statutory ground for so exempting the technicians' wearing of uniforms (see New York Council, Ass'n of Civilian Technicians, 757 F.2d at 506), or because the Guard invoked the "method and means" provision in the portion of its letter concerning subpart C.
 
 
 16
 Having thus framed the issue, the FLRA answered it with a non sequitur. Its decision in American Fed'n of Gov't Employees Council 214, AFL-CIO & Department of Defense, 30 F.L.R.A. 1025, 1034-35 (1988) ("Council 214 "), the FLRA explained, found proposals similar to those at issue here to be negotiable because they did not conflict with 5 U.S.C. § 5901, a provision limiting to 125 dollars per person the cost of any uniform allotment. Association of Civilian Technicians, 38 F.L.R.A. at 1014-15. Since the Guard was not even invoking 5 U.S.C. § 5901, the FLRA continued, it follows that the union's proposals must be negotiable. 38 F.L.R.A. at 1015. Somewhere along the way the Guard's "methods and means" objection dropped out. The FLRA never explained why a proposal specifying the number of free uniforms to be provided did not impinge on the Guard's management authority under § 7106(b)(1). Council 214 was not a "methods and means" decision and therefore had nothing to say about the question before the FLRA. We will not pass upon the Guard's arguments, set forth in its brief, regarding why the union's proposals would "directly interfere" with accomplishment of the Guard's mission and thus fall within § 7106(b)(1). The FLRA is entrusted with the duty to interpret this provision, see American Fed'n of Gov't Employees, Local 2441 v. FLRA, 864 F.2d 178, 180-82 (D.C.Cir.1988), but it has not yet expressed its judgment on the matter. SEC v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). Because "the record and the [FLRA's] explanation" for its decision "are insufficient to support judicial review," the case is remanded to the FLRA. American Fed'n of Gov't Employees v. FLRA, 793 F.2d 333, 338 (D.C.Cir.1986). Whether, on remand, the Guard may pursue its argument based on 37 U.S.C. § 418 is initially for the FLRA to determine.
 
 
 17
 So ordered.
 
 
 
 [1]
 Enlisted members of the Army and Air National Guards receive an "initial clothing allowance" nearly identical to that received by active duty Army and Air Force personnel. Both National Guard and active duty enlisted members receive four sets of the Battle Dress Uniform in this initial allowance. Compare Air Force Reg. No. 39-23, Attachment 1, tbls. 1-2 (1992) with id., at Attachment 2, tbls. 1-2; see Department of the Army, Common Table of Allowances 50-900, tbls. 1-2 (1990)
 
 
 [2]
 We do not rule on the union's motion to dismiss the Guard's petition for failure to comply with the time limits specified in 5 U.S.C. § 7123(a). The FLRA's cross-petition gives us jurisdiction. 5 U.S.C. § 7123(b); United States Postal Serv. v. NLRB, 969 F.2d 1064, 1069 (D.C.Cir.1992)