United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 24, 2003**

Charles R. Fulbruge III
Clerk

REVISED JUNE 30, 2003
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-60060
_____

JAMES H. LIPSCOMB, III, Major General,
in his official capacity as the Adjutant
General of the State of Mississippi, of
the Militia, of the Mississippi National
Guard, and as the Executive Head of
the Mississippi Military Department;
MISSISSIPPI MILITIA; MISSISSIPPI NATIONAL
GUARD; MISSISSIPPI MILITARY DEPARTMENT,

                                        Plaintiffs - Appellants,

                        versus

FEDERAL LABOR RELATIONS AUTHORITY, NANCY
SPEIGHT, in her official capacity as
Regional Director of the Federal Labor
Relations Authority, Atlanta Region;
LINDA J. NORWOOD, in her former official
capacity as Acting Regional Director of
the Federal Labor Relations Authority,
Atlanta Region,

                                        Defendants -Appellees.
_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

Before JOLLY, DUHÉ, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

    This appeal involves the efforts of the Association of Civilian

Technicians ("ACT"), a labor union, to conduct a representation

election among the Mississippi Army National Guard civilian

technicians. Adjutant General Lipscomb in his official capacity as head of the Mississippi National Guard ("MSNG"), the Mississippi Militia, and the Mississippi Military Department (along with the entities themselves)(collectively, "Lipscomb"), brought this action for a declaratory judgment that the Federal Labor Relations Authority ("FLRA") had no authority under the Federal Service Labor-Management Relations Act ("FSLMRA") to order the Mississippi Army National Guard ("MSANG"), a unit of MSNG, to permit a union election among its technicians. The district court dismissed the complaint, finding that the MSANG, as a subpart of the MSNG, and a federally recognized unit of the Army National Guard of the United States, is an activity of a federal agency; and that the Adjutant General ("AG"), as the duly authorized representative of the United States military service secretaries, is itself a federal agency. Thus, the district court concluded, the MSNG, MSANG, and AG are properly subject to the jurisdiction of the FLRA.

We hold that the civilian technicians, clearly federal employees by virtue of the National Guard Technicians Act, Pub. L. No. 90-486, 82 Stat. 775 (codified as amended at 32 U.S.C. § 709 (2003)), are included under the terms of the FSLMRA as federal employees of an Executive agency. We further find that the AG -- as an employer of these federal employees -- along with the MSNG and MSANG, which organizations operate under the AG's authority and direction, are federal executive agencies for the purpose of the

2

FSLMRA, and consequently are subject to the jurisdiction of the FLRA. Accordingly, we agree with the district court and AFFIRM its judgment dismissing the complaint.

I

In April 2000, the ACT petitioned the FLRA to order an election among the MSANG technicians. After an evidentiary hearing on the proposed bargaining unit and associated issues, the FLRA's office in Atlanta granted ACT's petition in February 2001 and ordered an election. On review to the FLRA in Washington, DC, this decision was upheld in June. When FLRA officials ordered an election, Lipscomb filed the present action, seeking declaratory and injunctive relief. Lipscomb alleged that the defendants were acting in excess of their statutory powers and in violation of plaintiffs' constitutional rights. The district court found it had jurisdiction over the action for declaratory judgment, and granted summary judgment in favor of the FLRA, holding that the FLRA had authority to order an election.

In reaching its conclusion, the district court, in a thorough and cogent opinion, found that MSNG is a federal agency; that MSANG is an activity of a federal agency; that because the AG wears a federal hat for purposes of applying the FSLMRA, the constitutional claims under the Tenth and Eleventh Amendments lacked merit; and finally, that because of the civilian nature of the technicians' employment, the doctrine of Feres v. United States, 340 U.S. 135

3

(1950) (military aspects of civilian employment are not subject to negotiation) did not apply.

On appeal, Lipscomb argues that the application of the FSLMRA to the MSANG and MSNG conflicts with the statutory scheme under which the Guard operates, with precedents of the Supreme Court and this Circuit, with the Tenth and Eleventh Amendments to the United States Constitution, and with the Feres doctrine. More specifically, Lipscomb contends that neither the MSNG, the MSANG, nor the AG are federal executive "agencies" or "activities" of those agencies within the meaning of 32 U.S.C. § 7103(a)(3) and related regulations, and therefore that the FLRA lacks jurisdiction over them.

## II

We begin our consideration of this appeal with full recognition that the national guard is the militia, in modern-day form, that is reserved to the states by Art. I § 8, cls. 15, 16 of the Constitution. Maryland v. United States, 381 U.S. 41, 46 (1965). However, in the modern-day federal scheme, the national guard has come to occupy a unique place. It has become, by design, a "hybrid" entity that carefully combines both federal and state characteristics, sometimes distinctly and sometimes not. The second Militia clause of the federal Constitution illustrates this duality, reserving "to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the

4

discipline prescribed by Congress." Const. art. I, § 8, cl. 16.

The daily operations of the national guard units are thus recognized generally to be under the control of the states, but governed largely by substantive federal law. Under the National Defense Act, 39 Stat. 166, passed in 1916, the guard has been trained in accordance with federal standards and is armed and funded by the United States government. The Army National Guard of the United States is a component of the Army, and is made up of the federally recognized units and organizations of the Army National Guards in the respective fifty states. 10 U.S.C. §§ 3062, 10105. This dual federal-state nature of the national guard system has remained essentially unchallenged, as the Supreme Court has observed. Perpich v. Department of Defense, 496 U.S. 334, 347 (1990).

In addition to its part-time, purely military personnel, the national guard employs full-time civilian workers, described as national guard technicians. These civilian technicians -- the object of the union's organizing efforts here -- are employed by and perform the daily operations of the state guard units, but are funded by the federal government. Despite their state character, these employees were explicitly granted federal employee status in 1968 when Congress enacted the Technicians Act. "In 1968, Congress was reacting to a situation in which national guard technicians were considered state employees and consequently were not assured of

5

uniform treatment with respect to fringe benefits or retirement plans." New Jersey Air National Guard v. FLRA, 677 F.2d 276, 283-84 (3d Cir. 1982) ("New Jersey Guard"). To provide uniformity and afford national guard technicians the emoluments of federal service, "all Guard technicians, who had previously been employees of the states, were declared to be federal employees, and were thereby afforded the benefits and rights generally provided for federal employees in the civil service." Id. at 279. Thus, through an act of Congress, national guard technicians are by design "dual-status" employees. See Brown v. United States, 227 F.3d 295, 298 (5th Cir. 2000); Davis v. Vandiver, 494 F.2d 830, 832 (5th Cir. 1974) ("The principal purpose of the National Guard Technicians Act . . . was to create a bifurcated nature of technician employment . . ..").

In granting technicians federal employee status under the Technicians Act, Congress was nonetheless concerned with protecting the military authority of the states. Accordingly, "federal employee status was carefully hinged upon the reservations set out in section 709[(f)]) of certain powers to the state adjutants general." New Jersey Guard, 677 F.2d at 284. "[S]ection 709[(f)], which ensures the authority of the state adjutants general, can be viewed as a virtual quid pro quo for the section 709[(e)] grant of federal employee status." Id. Numerous courts, after reviewing the legislative history of the Technicians Act, have held that the matters explicitly reserved to the discretion of the adjutants

6

general by section 709(f) reflect Congress's careful compromise, and thus are beyond the scope of bargaining under the FSLMRA.[1]  See, e.g., New York Council, Ass'n of Civilian Technicians v. FLRA, 757 F.2d 502, 505 (2d Cir. 1985); Indiana Air National Guard v. FLRA, 712 F.2d 1187, 1190, n.3 (7th Cir. 1983); State of Nebraska Military Department, Office of the Adjutant General v. FLRA, 705 F.2d 945 (8th Cir. 1983); California National Guard v. FLRA, 697 F.2d 874 (9th Cir. 1983).  These decisions recognized and safeguarded the careful state-federal power balance struck by Congress in enacting the Technicians Act; "it was necessary to carefully craft the legislation so as not to compromise the essential military requirements of state guard service."  American Federation of Government Employees, AFL-CIO, Local 2953 v. FLRA, 730 F.2d 1534, 1543 (D.C.Cir. 1984).  Section 709(f) reflects that deliberate calibration, and the courts, interpreting portions of the Technicians Act as exceptions to the FSLMRA's broad coverage, have found it to be a substantial check on the scope of the FLRA's

---

[1]The current section 709(f) was previously 709(e) and is referred to as such in cases prior to the 1999 Amendments, Pub.L. 106-65, § 524, which rewrote parts of § 709.  This opinion will refer to the current statute.

authority.[2] We now turn to examine more closely the act under which the FLRA attempts to assert jurisdiction over the MSANG.

III

The Civil Service Reform Act of 1978 brought about a new era of labor-management relations for the federal service. Pub. L. No. 95-454, 92 Stat. 111, 5 U.S.C § 7101, *et seq*. Title VII of the Reform Act, the FSLMRA, governs the labor relations of most federal employees with the federal government. The FSLMRA "grants federal agency employees the right to organize, provides for collective bargaining, and defines various unfair labor practices. §§ 7114(a)(1), 7116. It creates the FLRA, which is responsible for administering the statute through the exercise of broad adjudicatory, policymaking and rulemaking powers. §§ 7104, 7105." Nat'l Federation of Federal Employees, Local 1309 v. Dept. of Interior, 526 U.S. 86, 88 (1999). The Act applies to employees of an "Executive agency," § 7103(a)(2)-(3), and states that "each employee shall have the right to form, join, or assist any labor organization, or to refrain from such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right." § 7102. Notably, the Act

---

[2] It is worth noting that the FLRA itself protects this balance, rejecting unions' efforts to encroach on the discretion of the adjutants general by seeking to force bargaining over certain, excepted terms and conditions of technicians' employment. See, e.g., American Federation of Government Employees, AFL-CIO, Local 2953 v. FLRA, 730 F.2d 1534, 1541 (D.C.Cir. 1984) (affirming FLRA's decision upholding the national guard's refusal to bargain over matters that would conflict with the mandate of the Technicians Act).

8

specifically exempts certain Executive agencies from coverage, including the General Accounting Office, the Federal Bureau of Investigation, the Central Intelligence Agency, the National Security Agency, and the Federal Labor Relations Authority, among others. See § 7103(a)(3)(A)-(H). Although members of the uniformed services are explicitly exempted, § 7103(a)(2)(B)(ii), the national guard as such is not mentioned, nor are the civilian technicians employed thereby. Thus, we turn to address the next question (and now we begin to get into a thicket), whether the civilian technicians of the MSANG are "employees of an Executive agency" of the federal government within the meaning of the FSLMRA.

IV

Under the Technicians Act, a civilian technician in a state national guard is statutorily "an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States." 32 U.S.C. § 709(e). It is thus indisputable that the technicians of the MSANG are "employees of an Executive agency" under the coverage terms of the FSLMRA. They therefore have the right to choose union representation, as indeed numerous cases have acknowledged. See, e.g., Association of Civilian Technicians, Schenectady Chap. v. FLRA, 230 F.3d 377, 378 (D.C.Cir. 2000) (observing that, as federal employees, the guard's civilian technicians are entitled to engage in collective bargaining over certain matters); New York Council, Ass'n of Civilian

9

<u>Technicians v. FLRA</u>, 757 F.2d 502, 508 (2d Cir. 1985) (noting that federal employees' labor relations are governed by the Civil Service Reform Act, and applying the Act to national guard technicians); <u>New Jersey Guard</u>, 677 F.2d at 284 (noting the FSLMRA exempts certain executive agency employees from coverage, but because it does not reference the national guard or its technicians, it applies to them).

Nevertheless, Adjutant General Lipscomb maintains that the MSANG, the MSNG, and the AG are not subject to the jurisdiction of the FLRA because, while the technicians are federal employees for certain purposes, these entities that directly employ and supervise them are not federal "Executive agencies" under § 7103(a)(3), nor does their employment of the technicians constitute "federal activities" of an agency under 5 C.F.R. 2421.4.[3]  Consequently, to the extent that these technicians may be considered federal employees of the appellants, Adjutant General Lipscomb argues, they are not "employees of a federal Executive agency" within the meaning of the FSLMRA and are not subject to its coverage.  The question is thus reduced to whether these state national guard entities are "federal executive agencies" for purposes of the FSLMRA, because if they are, they are plainly covered within its terms.  Although many

---

[3]5 C.F.R. § 2421.4 defines "Activity" as it is used in the regulations implementing the FSLMRA.  <u>See</u> 5 C.F.R. 2420.1 (purpose of subchapter is to implement Chapter 71 of Title 5, governing Labor-Management Relations).  Section 2421.4 states that "Activity means any facility, organizational entity or geographical subdivision or any combination thereof, of any agency."

courts have had occasion to review various aspects of the Technicians Act and its interaction with the FSLMRA, it appears that no court of appeals has addressed the jurisdictional questions from the perspective raised by Lipscomb in this case. All of the decisions analyzing FLRA orders and actions taken with respect to the various state national guard organizations apparently have accepted without question the jurisdiction of the FLRA over them and their related entities, but only by virtue of the federal status of the employees, not the status of their employer.[4]

We should make reference to another factor (which we have earlier noted) that burdens appellants' argument that none of them is an "Executive agency." By the express terms of the Technicians Act, the civilian technicians of the MSANG -- bifurcated though the nature of their employment may be -- are declared to be federal employees of an Executive agency, i.e., the Department of the Army. 32 U.S.C. § 709(e). As such, it would seem that they are, by definition, statutorily entitled to the union organizational rights created for federal employees by the FSLMRA. See Association of Civilian Technicians, 230 F.3d at 378. Yet, given how the issue is framed in this case, we must consider whether the Adjutant General, as the designated employer of these particular federal employees,

---

[4]Even the MSNG, now contesting the FLRA's authority over it, has appeared previously before the FLRA to contest the appropriateness of a proposed bargaining unit, apparently without raising the jurisdictional objection now presented. Mississippi National Guard Mates Shop, Camp Shelby and Association of Civilian Technicians, Inc., 12 F.L.R.A. 618 (1983).

and the entities he oversees, are federal agencies for the purpose of the FSLMRA, and are thus subject to the jurisdiction of the FLRA.[5]

## A.
## The Adjutant General

We first examine the status of the Adjutant General in determining whether the FLRA properly asserts jurisdiction over the MSANG and MSNG. The appellants admit, as they must, that the AG is an employer, indeed the ultimate employer, of these federal employees as provided under an act of Congress, the Technicians Act. They also acknowledge that he is the officer with ultimate control over and responsibility for the MSNG and MSANG under state law. It follows from the undisputed federal status of the technicians that their employer and supervisor is, at the very least, an employer of federal employees. By any ordinary standard of reasoning, it would seem incontrovertible, in the absence of a contrary statutory definition,[6] that a statutory employer of regular and permanent

---

[5]Certainly, nothing in this opinion expands the scope of the Mississippi National Guard's duty to bargain; we are not called upon to examine any of the areas reserved by § 709(f) to the sole discretion of the adjutants general of the states. We proceed with the utmost caution, fully cognizant of the unique role and duty the national guard plays in the defense of this nation, as well as the special role the states have in administering the national guard and the Technicians Act; we do not purport to subject the national guard to any greater burden in its labor relations than that permissible under the existing law. We merely hold that the federal employees employed by the AG and MSANG are entitled to the rights afforded the rest of the non-excepted federal civilian employees, and recognized in countless court decisions affecting numerous national guard units and entities.

[6]5 U.S.C. § 7103(a)(3) defines "agency" as "an Executive agency including a nonappropriated fund instrumentality described in section 2105(c) of this title and the Veterans' Canteen Service, Department of Veterans Affairs), the Library of Congress, the Government Printing Office, and the

12

federal employees, is a "federal employer;" and, consequently, that a federal employer of such federal employees of the Executive Department, with the authority to direct and supervise all of their day-to-day work, must constitute, at least in some recognizable, if limited sense, an "agency" of the Executive branch of the federal government.

Yet the AG argues that because of his purely state character as an officer appointed by the state, in charge only of the state militia under Article I, § 8 of the Constitution, with authority primarily drawn from state statutes -- and with no federal statute expressly defining him as a "federal executive agency" -- he is not, under the terms of the FSLMRA (defining coverage as employees of an "Executive agency"), subject to the jurisdiction of the FLRA. We must admit that if one is searching for translucent, definitional, statutory words under the FSLMRA stating that the entities composing the Mississippi National Guard constitute an "Executive agency", the

Smithsonian Institution but does not include--

> (A) the General Accounting Office;
> (B) the Federal Bureau of Investigation;
> (C) the Central Intelligence Agency;
> (D) the National Security Agency;
> (E) the Tennessee Valley Authority;
> (F) the Federal Labor Relations Authority;
> (G) the Federal Service Impasses Panel; or
> (H) the United States Secret Service and the United States Secret Service Uniformed Division."

We find that the broad and somewhat circular terms of the statutory definitions of agency and Executive agency are non-dispositive in resolving the specific question that this appeal presents.

13

search will be disappointing. But yet our consideration of the many factors to which we have alluded -- most arising from the Technicians Act -- leaves no doubt that the hybrid character of the AG includes a federal component, which in his capacity as employer of the technicians renders him an "Executive agency". As one court has observed, Section 709 "charges the adjutant generals with employment and administration of the civilian technicians who are federal employees. In view of the foregoing there can be no doubt that the Adjutant General of Delaware is an agency or an agent of the United States and therefore within the purview of § 1361 [providing action for mandamus in district courts against federal officers or agencies]." Chaudoin v. Atkinson, 494 F.2d 1323, 1329 (3d Cir. 1974).

Indeed, in NeSmith v. Fulton, 615 F.2d 196, 198 (5th Cir. 1980), this Court held that the AG is *itself* a federal agency, despite its status as a state office, because of the federal nature of the employees the AG supervises and the substantive federal law that governs the AG's duties. "The conclusion that an adjutant general is a federal agency as well as a state officer reflects the hybrid state-federal character of the National Guard and the role of adjutants general in administering it." Id. at 199. Although this holding was applied to resolve a procedural issue, the court's conclusion in NeSmith -- that the AG is itself a federal agency -- constitutes precedent that, even without other considerations to

14

which we have alluded, will control the outcome of this case. See also Chaudoin, 494 F.2d at 1329; Gilliam v. Miller, 973 F.2d 760, 762 (9th Cir. 1992) (Oregon AG's personnel actions taken as supervisor of the federal civilian technicians were taken in the capacity of a federal agency, for purposes of determining whether the federal Administrative Procedures Act applies). In short, the AG constitutes an "Executive agency" for the purposes of this case.

Because of the federal character that the AG assumes under the Technicians Act, and because the FLRA asserts its jurisdiction over these entities only in their federal capacities, Appellants' remaining arguments, based on the Tenth and Eleventh Amendments to the federal Constitution and the state character of the AG, must fail.[7]

**B.**
**The Mississippi National Guard &**
**The Mississippi Army National Guard**

The AG argues, however, that even if the AG is a federal agency, this appeal still is not resolved. He points out that the FLRA does not seek to assert its jurisdiction over the AG -- that

---

[7]The AG relies on the Tenth and Eleventh Amendments to the Constitution to avoid the FLRA's assertion of jurisdiction over it. Appellants argue that the application of the FSLMRA to the AG amounts to conscription of a state official into the performance of a federal duty in violation of the Tenth Amendment. Printz v. United States, 521 U.S. 898 (1997). The conclusion that the AG is a federal agency, subject to the FSLMRA in its federal capacity, renders Printz inapposite.

MSNG's second constitutional argument relies on the Eleventh Amendment and Federal Maritime Commission v. South Carolina State Ports Authority, 535 U.S. 743 (2002) (state sovereign immunity precluded a federal agency from adjudicating a private party's complaint that the state port had violated the Shipping Act). For the purposes of the rights asserted in this case, the MSNG is a federal agency, unlike the state port in South Carolina.

is to say, the AG is not a respondent to the underlying agency proceedings. Instead, only the MSNG and MSANG -- the entities to which the technicians are assigned -- are named as the employer parties in the proceedings before the FLRA.  In this connection, the district court held that MSNG is a federal executive agency for purposes of the FSLMRA, 5 U.S.C. § 7103(a)(3), and that MSANG is an "activity" of a federal agency under 5 C.F.R. § 2421.4 ("Activity means any facility, organizational entity, or geographical subdivision or any combination thereof, of any agency."), and thus they are subject to the obligations of the FSLMRA.  The district court concluded that MSANG is an "activity" of the Department of the Army, because it is recognized as a part of the Army National Guard of the United States.[8]  Lipscomb argues that neither the MSNG or the

---

[8]The district court's analysis reasoned as follows:

> [T]he statute defines "agency" to mean an "Executive agency," 5 U.S.C. § 7103(a)(3), which is in turn defined as "an Executive department ...." 5 U.S.C. § 105.  The Department of Defense is an "executive department," see 5 U.S.C. § 101, and 10 U.S.C. § 111(a); and the Department of the Army is a component of the Department of Defense, see 10 U.S.C. § 111(b)(6).  The Department of the Army consists of the Regular Army, the Army National Guard of the United States, the Army National Guard while in service of the United States and the Army Reserve, see 10 U.S.C. § 3062(b)-(d); and the Army National Guard of the United States is the reserve component of the Army that consists in relevant part of the "federally recognized units and organizations of the Army National Guard," see 10 U.S.C. § 10105.  As it is indisputable "a federally recognized unit[] and organization of the Army National Guard," the Mississippi Army National Guard (which is a subset of the MSNG), is

16

MSANG are agencies, and that the MSANG, by whom the instant technicians are employed, is not an "activity" of a federal agency.[9]

At the outset, we must say that once we have determined that the AG is a federal executive agency, it requires little exercise in reasoning for us to conclude that the MSANG and MSNG are executive agencies for the purpose of FLRA authority and this legal proceeding. This is true because they exist and operate under the authoritative direction and control of the adjutant general -- indeed they are merely the adjuncts of his office, under whom, and on whose behalf, civilian technicians work.

The AG is the executive head of the Mississippi military department, Miss. Code. § 33-3-3, and he "shall provide for and be responsible for the organization, training, tactical employment, and discipline of the Mississippi National Guard ...." Miss. Code. § 33-3-11. This includes the supervision and authorization of the Assistant Adjutants General for Army and Air. See e.g., Miss. Code.

---

thus an element of the Army National Guard of the United States, and hence falls within the definition of "activity" of an "agency" within the meaning of § 7103(a)(3) of the FLSRA, which extends to federal agencies and to "activities" of federal agencies. See 5 C.F.R. § 2421.4.

Lipscomb v. Federal Labor Relations Authority, 200 F.Supp.2d 650, 660 (S.D.Miss. 2001).

[9]As we note below, the question whether the FLRA can compel the Mississippi National Guard's compliance with the FLRA may be adequately resolved by the nature of AG Lipscomb himself -- a federal employer and agency for purposes of the FSLRA. However, because the parties ascribe great importance to the nature of the MSANG, we address this issue.

§ 33-3-9 (Assistant Adjutant General for Army "shall aid the Adjutant General by the performance of such duties as may be assigned to him"). It follows that, to the extent that the AG acts as an executive agency of the federal government, when the AG acts through the MSNG and MSANG in carrying out his federal duties -- as he does here as the employer of the technicians -- they likewise are departments of the federal agency of the AG -- or if one chooses to use the words of the federal regulations, supra, these organizations are "activities" of a federal agency. Certainly, the appellants have offered no basis for us to reject this rationale, plainly dictated by a common sense reading of the applicable state statutes when considered in the light of our holding that the AG constitutes a federal executive agency.[10]

V

In sum, the appellants have provided us with no persuasive reason to reject decades of settled practice and the decisions of our sister circuits, which have upheld the organizational rights of national guard civilian technicians under the FSLMRA. Although neither we nor other appellate courts have previously addressed the precise arguments presented in this appeal, the resolution of the

---

[10]Lipscomb cites Clark v. United States, 322 F.3d 1358 (Fed. Cir. 2003) to support his argument that because the MSANG is an organizational entity of the state, distinct from the National Guard of the United States, it cannot be deemed a federal "Executive agency." Clark addressed the status of guardsmen -- not dual-status technicians -- under a wholly different statutory scheme. Consequently, Clark does not affect this Court's conclusions with respect to the federal character of AG Lipscomb or the entities he controls.

18

ultimate jurisdictional question presented is straightforward: Federal employees of federal executive agencies, with the noted statutory exceptions, are entitled to exercise the rights provided in the FSLMRA. The civilian technicians are non-excluded federal employees under the Act, and the AG employs those civilian technicians; as the federal employer of these federal employees, with full authority over such federal employees, the AG is -- notwithstanding his dual capacity as a military officer of the State of Mississippi -- an agency of the executive department of the federal government in the context of these proceedings, as are his organizational adjuncts in the exercise of that employer-related authority over federal employees.

Thus, for the reasons set out above, the appellants have failed to demonstrate that the district court erred in denying to them a declaratory judgment that the FLRA has no authority over the MSANG to order an election among the technicians in its service.[11] Accordingly, the judgment of the district court dismissing the complaint for declaratory relief is

AFFIRMED.

---

[11]Appellants' argument that this action is barred by Feres v. United States, 340 U.S. 135 (1950), is inapposite. In Feres, the Supreme Court held that military officers were not liable for injuries arising out of active duty in the armed forces. This action involves efforts by a federal agency to vindicate civilian employees' union rights, not by an individual seeking to impose liability on an officer of the military for duties arising from the unique relations between soldiers and their superiors. The Feres doctrine does not reach this case. See Chappell v. Wallace, 462 U.S. 296, 299, 305 (1983).