RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0289p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

THE OHIO ADJUTANT GENERAL'S DEPARTMENT; Major
General JOHN C. HARRIS, JR., in his official capacity as
the Adjutant General of the Ohio National Guard;
UNITED STATES DEPARTMENT OF DEFENSE/OHIO
NATIONAL GUARD,

　　　　　　　　　　　　　　*Petitioners*,

　　　　*v.*

FEDERAL LABOR RELATIONS AUTHORITY,

　　　　　　　　　　　　　　*Respondent*,

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
LOCAL 3970, AFL-CIO,

　　　　　　　　　　　　　　*Intervenor*.

⎤
⎟
⎟
⎟
⎟
⎟
⎟
⎟
⎬　　No. 20-3908
⎟
⎟
⎟
⎟
⎟
⎟
⎟
⎦

_____

On Petition for Review from the Federal Labor Relations Authority;
Nos. CH-CA-17-0248; CH-CA-17-0249; CH-CA-17-0251; CH-CA-17-0252; CH-CA-17-0336.

Argued:  October 27, 2021

Decided and Filed:  December 21, 2021

Before: DAUGHTREY, COLE, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Michael J. Hendershot, OFFICE OF THE OHIO ATTORNEY GENERAL,
Columbus, Ohio, for Petitioners.  Rebecca J. Osborne, FEDERAL LABOR RELATIONS
AUTHORITY, Washington, D.C., for Respondent.  Matthew W. Milledge, AMERICAN
FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, Washington, D.C., for
Intervenor. **ON BRIEF:**  Michael J. Hendershot, Benjamin M. Flowers, Dale T. Vitale, OFFICE
OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Petitioners.  Rebecca J. Osborne,
Noah Peters, FEDERAL LABOR RELATIONS AUTHORITY, Washington, D.C., for

Respondent.    Matthew W. Milledge, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, Washington, D.C., for Intervenor.

———————————

**OPINION**

———————————

COLE, Circuit Judge.    The Ohio National Guard and its Adjutant General (collectively, the "Guard") petition this court to review a Federal Labor Relations Authority ("FLRA") decision and order arising out of a collective-bargaining dispute between the Guard and the union that represents its technicians, the American Federation of Government Employees, Local 3970, AFL-CIO (the "Union").    The Guard seeks reversal of the decision and order, arguing that the FLRA does not have jurisdiction under the Federal Service Labor-Management Relations Statute (the "Statute"), 5 U.S.C. §§ 7101–7135, to adjudicate federal labor-relations questions between the Guard and the technicians' Union.    The Guard additionally argues that it is unconstitutional for the FLRA to enforce the Statute by issuing orders to state national guards and their adjutants general, and that the Guard cannot legally comply with the FLRA's order. We deny the Guard's petition.

## I.  BACKGROUND

This case arises from the Guard's decision to end its 45 year-long collective-bargaining relationship with the Union that represents its technicians.    National Guard technicians are civilian federal employees who work in a wide variety of clerical, administrative, and technical roles in support of the Guard's daily operations.    *N.J. Air Nat'l Guard v. FLRA*, 677 F.2d 276, 279 (3d Cir. 1982).    Technicians are described as dual-status employees because their employment is "a hybrid, both of federal and state, and of civilian and military strains." *Ill. Nat'l Guard v. FLRA*, 854 F.2d 1396, 1398 (D.C. Cir. 1988).    Although technicians hold a military grade and wear a military uniform while performing the military aspects of their jobs, they are also "afforded the benefits and rights generally provided for federal employees in the civil service." *N.J. Air Nat'l Guard,* 677 F.2d at 279.

The most recent collective bargaining agreement ("CBA") between the Guard and the Union was signed in 2011 and was set to expire in 2014. As the expiration date neared, the Guard and the Union started negotiations for a new CBA. But no new agreement was reached by the expiration date. In January 2014, seemingly to continue bargaining and reestablish the CBA, the Guard issued a memorandum. In this memorandum, the Guard recommitted to being bound by the mandatory bargaining topics set forth in the 2011 CBA.

But the Guard did not keep its promise. Instead, in September 2016, the Guard issued a memorandum titled "Collective Bargaining Agreement (CBA)." This memorandum was sent to over 2,000 people, including many bargaining-unit technicians. The memorandum announced:

> 1. **No Collective Bargaining Agreement (CBA).** The Ohio National Guard has informed Local 3970, American Federation of Government Employees, that the Ohio National Guard is not bound by any provision of the CBA between the parties that expired in 2014.
>
> 2. **Federal Service Labor Management Relations Statute** . . . . The Ohio National Guard has also communicated to Local 3970 that it questions the applicability to National Guard Technicians of the statutes in the [Federal Service Labor-Management Relations Statute] that have historically underlain the collective bargaining relationship between local 3970 and the Ohio National Guard. The details of this jurisdictional dispute are unimportant here; but until this dispute is resolved in a satisfactory way, new CBA or by some other means, the Ohio National Guard does not consider itself obligated to abide by the [Federal Service Labor-Management Relations Statute].

(ALJ Decision, Pet'r App., Dkt. 19, p. 21a (alterations added.))

After issuing this memorandum and thus ending the collective-bargaining relationship between itself and the technicians' Union, the Guard next started terminating Union dues deductions. First, the Guard told the Union it did not have Standard Form 1187s ("Form 1187s")—which is a request for payroll deductions for dues—on file for most of the dues-paying members of the Union. Federal-sector bargaining-unit members (like those in the Union) are required to submit Form 1187s to their employing agencies. Once a Form 1187 is submitted, union dues are deducted from member paychecks, as provided by 5 U.S.C. § 7115(a). If employees want to cancel dues allotments, they must submit a different form: Standard Form 1188—cancellation of payroll deductions ("Form 1188").

The Guard acknowledged it was required to maintain Form 1187s in its files, and that the bargaining unit employees were not so obligated. Still, the Guard could not explain what happened to the Form 1187s, and it sent letters to most dues-paying members, including the President of the local Union, asking them to either provide a copy of the original form or resubmit the form within 60 days. If members did not submit a new or original Form 1187 within the 60-day period, the Guard completed a Form 1188 for those employees and signed the forms on their behalf without asking for consent. As a result, union dues deductions for around 89 bargaining unit employees were terminated between September 2016 and June 2017. In April 2017, the Guard sent a letter to at least 48 bargaining-unit employees, 41 of whom had a Form 1187 on file. In this letter, the Guard recommended that the union-dues allotments for these employees be terminated because there was no longer a CBA.

In March 2017, in response to the Guard's conduct, the Union filed four Unfair Labor Practice charges ("ULPs") with the FLRA. At this stage in the ULP process, the FLRA's regional General Counsel investigates the charges and decides whether to issue a complaint on behalf of the Union. Here, the General Counsel issued a complaint alleging that the Guard refused to negotiate in good faith when it told employees it was no longer bound by the Statute or the CBA. The General Counsel also alleged that the Guard refused to negotiate in good faith when it unilaterally implemented new policies regarding union-dues deductions and, as a result, the Guard interfered with, restrained, and coerced employees in the exercise of their rights under the Statute.

The Union filed an additional ULP charge with the FLRA in April 2017. After investigating, the FLRA's Regional Director filed a second complaint on behalf of the Union and consolidated this new case with the first one. Like the General Counsel's first complaint, this one also alleged that the Guard interfered with, restrained, and coerced employees in the exercise of their rights under the Statute, this time by recommending the termination of employees' union-dues deductions.

In May 2017, the Guard filed answers to the first and second complaints. In both answers, the Guard admitted certain facts, but denied that it violated the Statute. For example, the Guard conceded that it terminated the dues of most of the paying bargaining-unit employees.

But the Guard denied that it constitutes an "agency" and that technician bargaining-unit employees are "employees" for the purposes of the Statute. Both the General Counsel and the Guard moved for summary judgment before an Administrative Law Judge ("ALJ"). The assigned ALJ denied both motions and set the case for a hearing.[1]

After conducting the hearing, the ALJ issued a recommended decision on June 18, 2018. The ALJ found that: (1) the Guard is an "agency" within the meaning of § 7103(a)(3); (2) the FLRA had jurisdiction over the Guard; (3) technicians had collective-bargaining rights under the Statute; and (4) the Guard's actions in repudiating the CBA clearly violated the Statute.

The ALJ ordered the Guard to cease and desist from: (1) "[f]ailing and/or refusing to recognize and comply with the mandatory terms of the expired [CBA];" (2) "[f]ailing and/or refusing to maintain existing personnel policies, and practices and matters affecting working conditions;" (3) "[u]nlawfully removing employees from union dues withholdings, or threatening to do so;" and (4) "[i]nforming employees, supervisors, and managers that the [Guard] does not consider itself bound by the [Statute] and that the CBA… is a nullity." The ALJ also recommended that the Guard reinstate the dues allotments and reimburse to the Union the dues that were improperly cancelled.

If either party disagrees with the ALJ's recommended decision, that party can file an appeal with the FLRA's headquarters in Washington, D.C. These appeals are called "exceptions." 5 C.F.R. § 2423.40. Exceptions are heard by a panel of FLRA members. And in July 2018, the Guard filed exceptions to the ALJ's recommended decision. The Guard argued that the FLRA cannot regulate state national guards because Congress had not called the militia into service. The Guard further argued that the FLRA does not have jurisdiction over technician employees. In addition to challenging the FLRA's jurisdiction, the Guard contended that its actions were not ULPs, and that the remedies recommended by the ALJ were inappropriate.

In August 2018, the FLRA's General Counsel opposed the Guard's exceptions. Citing our decision in *Federal Labor Relations Authority v. Michigan Army National Guard*, 878 F.3d

---

[1]ULP hearings are adversarial hearings before an ALJ.

171 (6th Cir. 2017), the General Counsel argued that the Guard fell under the FLRA's jurisdiction in its capacity as the employer of technicians, who are protected by the Statute.

On June 30, 2020, the three-member FLRA panel, with one member dissenting, issued a Decision and Order adopting the ALJ's recommended decision in full, finding the ALJ did not commit prejudicial error in his factual findings or legal analysis. The FLRA found that the Guard's exception "served only to repeat its arguments below." The Guard timely petitioned this court to review the FLRA's order, arguing that we should reverse the FLRA's decision.

## II. ANALYSIS

### A. The FLRA's Waiver Argument

The core issue before us is whether the FLRA has jurisdiction under the Statute to adjudicate federal labor-relations questions between the Guard and the technicians' Union.[2] But before turning to the merits, we first address the FLRA's waiver argument. Title 5, Section 7123(c) of the United States Code provides that "[n]o objection that has not been urged before the [FLRA], or its designee, shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances." On appeal, the FLRA asserts that five of the Guard's arguments cannot be reviewed by this court because they were not properly exhausted in the Guard's exceptions briefing below. The five arguments that the FLRA takes issue with are:

1) The Guard's arguments based on the text of the Statute.
2) The Guard's arguments based on the canon of constitutional avoidance.
3) The Guard's arguments based on the federalism canon.
4) The Guard's argument that the FLRA's order to reinstate the wrongfully terminated dues allotments is unenforceable.
5) The Guard's arguments based on the "uniformed services" exception.

We are not persuaded by the FLRA's narrow reading of the exhaustion requirement in 5 U.S.C. § 7123(c). On appeal, "parties are not limited to the precise arguments they made below." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (quoting *Yee v.*

---

[2]Created by the Civil Service Reform Act of 1978, the FLRA is an independent federal agency that governs labor-relations between the federal government and its employees.

*Escondido,* 503 U.S. 519, 534 (1992)).  Although it is true that the Guard did not raise these five arguments verbatim at the exceptions stage, each argument nonetheless supports the consistently argued claims that the Guard brought below.  It would be unreasonable, and in some ways would defeat the purposes of appellate litigation, to require the petitioners to raise the exact same arguments that they raised earlier.  Thus, these five arguments are not waived, and we move on to the merits.

### B.  The FLRA's Jurisdiction Over the Guard

The Guard contends that the FLRA lacks jurisdiction over the Guard because the Guard is not an executive agency under the Statute.  Questions of statutory interpretation are questions of law, which we review de novo.  *Ammex, Inc. v. United States*, 367 F.3d 530, 533 (6th Cir. 2004) (citing *Johnson v. Econ. Dev. Corp*., 241 F.3d 501, 509 (6th Cir. 2001)).

As background, the Statute is a federal law that establishes collective-bargaining rights for most employees of the federal government.  It was established under Title VII of the Civil Service Reform Act of 1978, which limited the scope of the FLRA's jurisdiction to "executive agencies."  5 U.S.C. § 7103(a)(3).  Thus, we start our analysis by addressing whether the Guard is a federal executive agency under the Statute.  Our precedent dictates that it is.

In *Michigan Army National Guard,* the Michigan National Guard challenged the power of the FLRA to assert jurisdiction over it and cited to many of the same cases on which the Guard now relies.  We rejected their challenge and held that the Statute "clearly" provides labor rights and protections to dual-status technicians, and that the FLRA has jurisdiction over state national guards and their adjutants general with respect to technician bargaining.  *Id.* at 178 (citing *N.J. Air Nat'l Guard*, 677 F.2d at 286; *Lipscomb v. FLRA,* 333 F.3d 611, 620 (5th Cir. 2003)).  We reasoned that "[w]hile each state unit of the National Guard is 'a state agency, under state authority and control,' the 'activity, makeup, and function of the Guard is provided for, to a large extent, by federal law.'"  *Id.* at 177 (citing *New Jersey Air Nat'l Guard*, 677 F.2d at 278).

Put differently, in their capacity as employers of dual-status technicians who receive "the benefits and rights generally provided for federal employees in the civil service," *id.* (quoting *New Jersey Air Nat'l Guard*, 677 F.2d at 279), state national guards are executive agencies.

Because our precedent dictates that the FLRA has jurisdiction over the Michigan National Guard with respect to labor-relations disputes, it would be unreasonable to suggest that the FLRA does not have jurisdiction over the Ohio National Guard with respect to nearly identical issues.

Every other circuit that has considered this issue has similarly found that state national guards constitute executive agencies in their capacity as employers and supervisors of technicians. For example, in *Lipscomb*, 333 F.3d at 616, the Fifth Circuit held that dual-status technicians are employees of an "executive agency" for the purposes of the Statute. In fact, the Guard itself concedes that many circuits have held that "technicians have bargaining rights under the Reform Act, and that state adjutants general or state national guards are therefore subject to the orders of the FLRA." *See Assoc. of Civilian Technicians v. FLRA*, 230 F.3d 377, 378 (D.C. Cir. 2000); *U.S. Dep't of Def. v. FLRA*, 982 F.2d 577, 578 (D.C. Cir. 1993); *N.Y. Council, Ass'n of Civilian Technicians v. FLRA*, 757 F.2d 502, 505 (2d Cir. 1985); *Ind. Air Nat'l Guard v. FLRA*, 712 F.2d 1187, 1190 n.3 (7th Cir. 1983); *Neb. v. FLRA*, 705 F.2d 945, 948 (8th Cir. 1983); *Cal. Nat'l Guard v. FLRA*, 697 F.2d 874, 879 (9th Cir. 1983); *N.J. Air Nat'l Guard*, 677 F.2d at 286. If we accepted the Guard's argument to the contrary, we would create a circuit split. And given the "unanimity of thought" across the circuits on this issue, we are not inclined to do so. *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 279 (6th Cir. 2010).

For the foregoing reasons, the Guard is a federal executive agency in its capacity as the employer of technicians. Thus, the FLRA has jurisdiction over the Guard with respect to labor-relations issues under the Statute.

## C. The FLRA's Jurisdiction Over Dual-Status Technicians

To issue orders over the Guard with respect to the collective-bargaining disputes at issue here, the FLRA also needs jurisdiction over dual-status technicians. The Guard argues that technicians are members of the uniformed services, and that the Civil Service Reform Act explicitly excludes members of the uniformed services from the FLRA's reach. 5 U.S.C. § 7103(a)(2)(B)(ii). According to the Guard, technicians are members of the uniformed services because they must "wear the uniform appropriate for the member's grade and component of the

armed forces." 32 U.S.C. § 709(b)(4). But once again, our decision in *Michigan Army National Guard* forecloses this conclusion.

In *Michigan Army National Guard*, we held that dual-status national guard technicians are covered by the Statute and are thus afforded certain labor rights. 878 F.3d at 179–80. This includes the right to form, join, and/or assist a labor organization, and the right for labor organizations to engage in collective bargaining with their employing guard over certain labor relations matters related to the civilian aspects of technician employment. *Id.* at 181. And because the FLRA is tasked with enforcing these rights, it follows that technicians fall under the FLRA's jurisdiction. Were we to accept the Guard's argument that technicians are not covered under the FLRA's jurisdiction, we would in effect be overturning the ruling of a three-judge panel, an action we are not permitted to take under these circumstances. *See, e.g., United States v. Lanier*, 201 F.3d 842, 846 (6th Cir. 2000).

Statutory analysis provides further support for the conclusion that dual-status technicians fall within the FLRA's jurisdiction. The Civil Service Reform Act separates government service into three buckets: the civil service, the armed forces, and the uniformed services. 5 U.S.C. § 2101(1). Additionally, the text of 10 U.S.C. § 10216(a) discusses dual-status military technicians and states that "for purposes of this section and *any other provisions of the law*," dual-status technicians are "federal civilian employees," not uniformed services employees. (Emphasis added.) Because technicians are federal civilian employees, they have collective bargaining rights under the Statute.

The legislative history of 10 U.S.C. § 976, which prohibits military unions, also supports this reading. The House Committee specifically rejected the idea that civilian technicians were members of the military. H.R. Rep. No. 95-894(II) at 7 (1978). This legislative history reflects Congress's efforts to ensure that dual-status technicians, in their civilian capacity, have collective bargaining rights that members of the uniformed services do not have.

Thus, for the reasons stated, both the Guard and its technicians fall within the scope of the FLRA's jurisdiction.

**D. The Guard's Constitutional Arguments**

We turn next to the Guard's constitutional challenge. We review constitutional questions de novo. *Ammex*, 367 F.3d at 533 (citing *Johnson*, 241 F.3d at 509.)

The Guard argues that, under the Militia Clause of the Constitution, art. I, § 8, cls. 15–16, Congress's power to govern state national guards (militias) extends only to the part of the militia that is employed in service of the United States. The Guard understands this to mean that "Congress's power to govern the militia applies only to the portion of the militia called into active duty at any one time." (Pet'r Br. 32.) If the state guard has not been called into active duty, argues the Guard, then the Tenth Amendment "reserves to the states" the power to regulate. (*Id.* at 33.) This argument fails. It is not unconstitutional for the FLRA to enforce the Statute by issuing orders to state national guards and their adjutants general. Not a single court of appeals has found that the FLRA lacks jurisdiction over dual-status technicians, or their employing agencies, when the labor dispute at hand is related to the civilian aspects of a technician's job.

In *Lipscomb*, for example, the Fifth Circuit addressed similar arguments from the Mississippi National Guard. 333 F.3d at 620. Specifically, the Fifth Circuit rejected the argument that the Tenth and Eleventh Amendments barred the FLRA from exercising jurisdiction over the Mississippi Guard. *Id.* at 618 n.7. The Fifth Circuit found that, in its capacity as employer of dual-status technicians, the Mississippi Adjutant General and Mississippi National Guard were not acting as state agencies, but instead as federal executive agencies. *Id.* at 618–19. For that reason, the Fifth Circuit held there were no constitutional problems with Congress giving the FLRA jurisdiction over the state guard. The Tenth and Eleventh Amendment issues addressed in *Lipscomb* mirror the Guard's arguments in this case, and we find the Fifth Circuit's reasoning persuasive here. It is not unconstitutional for the FLRA to enforce the Statute by issuing orders to state national guards in their role as employers of technicians.

**E.  The Legality of Restoring the Cancelled Dues Allotments**

The final issue before us is whether the Guard can legally comply with the FLRA's order, which requires it to reinstate the canceled dues allotment.  Whether the Guard can comply is a question of law we review de novo.  *Ammex*, 367 F.3d at 533 (citing *Johnson*, 241 F.3d at 509.)

The Guard argues that compliance with the FLRA's reinstatement order would require it to violate federal law.  This argument is unpersuasive.  It is neither unlawful nor impractical for the Guard to comply with the FLRA's order requiring it to restore the erroneously cancelled dues allotments.  The Statute empowers the FLRA to protect the labor rights of technicians, and in this case, it found that the Guard committed a violation.  Specifically, despite the statutory requirement that employees must submit Form 1188s to change or cancel their allotments, the Guard itself submitted Form 1188s on behalf of numerous technicians without their consent.  If the Guard could so easily avoid compliance with an order under these circumstances, the Statute would have no teeth.

## III.  CONCLUSION

In conclusion, we DENY the Guard's Petition for Review.  The FLRA has jurisdiction to adjudicate the collective-bargaining dispute between the Guard and the Union and to issue an order requiring the Guard to comply.  Further, the Guard can lawfully comply with the FLRA's order.