*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0131P (6th Cir.)
File Name: 04a0131p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AMMEX, INC.,
　　*Plaintiff-Appellant,*

　　*v.*

UNITED STATES OF AMERICA;
INTERNAL REVENUE SERVICE,
　　*Defendants-Appellees.*

No. 02-2375

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-73388—George C. Steeh, District Judge.

Argued: March 12, 2004

Decided and Filed: May 6, 2004

Before: MERRITT and DAUGHTREY, Circuit Judges;
HOOD, District Judge.*

---

　　*The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

---

## COUNSEL

**ARGUED:** Craig L. John, DYKEMA GOSSE, Bloomfield Hills, Michigan, for Appellant. Teresa E. McLaughlin, U. S. DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Craig L. John, Mark H. Sutton, Christopher S. Olson, DYKEMA GOSSE, Bloomfield Hills, Michigan, for Appellant. Teresa E. McLaughlin, U. S. DEPARTMENT OF JUSTICE, Washington, D.C., Judith A. Hagley, U. S. DEPARTMENT OF JUSTICE, TAX DIVISION, Washington, D.C., for Appellees.

　　HOOD, D. J., delivered the opinion of the court, in which DAUGHTREY, J., joined. MERRITT, J. (pp. 11-12), delivered a separate concurring opinion.

---

## OPINION

---

　　HOOD, District Judge. Plaintiff-Appellant, Ammex, Inc. ("Ammex") sued the United States to recover motor fuel excise taxes allegedly collected in violation of, *inter alia,* the Export Clause of the United States Constitution. Ammex now appeals the district court's order granting Defendants-Appellees' motion for summary judgment on the basis of lack of standing. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

### I. FACTUAL AND PROCEDURAL HISTORY

　　Ammex operates a "sterile" U.S. Customs Class 9 bonded warehouse, commonly known as a duty-free store, or duty-free sales enterprise, in Detroit, Michigan. The designation "sterile" means that the physical design and operation of the facility guarantee the exportation of products sold therein. The store is located on West Lafayette Street adjacent to the

Ambassador Bridge, which connects the United States and Canada. Customers entering Ammex's facility have necessarily proceeded beyond the "point of no return" and must exit the United States.

As a duty-free sales enterprise, Ammex is permitted to sell for export certain goods "duty-free." These duty-free goods are sold to customers who transport them directly to Canada after leaving Ammex's store. At issue in the district court case was whether Ammex could sell gasoline and diesel fuel on a duty-free basis.

Ammex purchased the fuel in question with the intention of selling it for export from its duty-free store. This store has an Automatic Tank Gauging system, whereby its daily fuel needs are automatically recorded and transmitted to its purchasing agent, Fleet Fuel, LLC ("Fleet Fuel"). Based on the data received from that system, Fleet Fuel prepares purchase orders on behalf of Ammex. During the periods at issue, Ammex purchased both gasoline and diesel fuel from several local suppliers, including BP Oil Co., Atlas Oil Co., Viking Oil, Peerless Distributing Co., and Mooney Oil Co.

Because of the duty-free nature of its operations, Ammex requested to purchase the fuel free of federal excise tax. The suppliers, however, as a condition of Ammex's purchase of the fuel, required payment of federal excise taxes at the time of purchase. These taxes were imposed at the time the fuel was removed from the fuel terminal, known as the terminal rack, for delivery to Ammex's duty-free store. This practice is consistent with I.R.C. § 4081, which places the legal incidence of the excise tax at this point in the chain of sales transactions. After removing the fuel from the terminal rack, third-party carriers delivered the fuel directly to Ammex's duty-free facility and unloaded it into Ammex's fuel dispensing tanks. Ammex's purchasing agent remitted payment for the fuel within ten days of its delivery to Ammex's fuel storage facility. After delivery, Ammex sold

the fuel to customers who were necessarily required to take it into Canada.

The Export Clause of the United States Constitution prohibits the imposition of any federal tax on duty-free merchandise. This constitutional proscription is confirmed by federal customs law. See, 19 U.S.C. § 1555(b)(3)(C), (8)(E). Ammex also cites to several provisions of the Internal Revenue Code in support of its claim for a refund of the tax paid on the gasoline and diesel fuel at issue.

In part, Ammex relies on a letter ruling it received from the U.S. Customs Service Port Director for Detroit dated September 5, 2000. In that letter, Ammex was granted permission to expand its Class 9 duty-free warehouse operation to include the sale of gasoline and diesel fuel. That letter ruling, however, was revoked in a notice-and-comment ruling letter and explanatory note dated November 1, 2001. The basis of the revocation was that only fuel on which neither duty nor tax has been assessed can qualify as duty-free fuel under 19 U.S.C. § 1555(b)(8)(E), and the fuel sold by Ammex had been assessed a federal excise tax. Customs was enjoined from effectuating its revocation because of a temporary restraining order ("TRO") issued by Court of International Trade Judge Evan J. Wallach on January 23, 2002. That TRO was subsequently dissolved by Judge Wallach on February 22, 2002.

Asserting that taxation of the fuel violated the Export Clause of the Constitution, Ammex made refund claims with respect to gasoline and diesel fuel for each of the tax periods at issue. The total refund requested was $647,494 plus interest. The IRS disallowed Plaintiff's claims for two reasons: first, Plaintiff did not establish that the gasoline and diesel fuel sold constituted export sales, and second, Ammex did not establish that it was the proper party to seek a refund.

On February 3, 2000, Ammex filed its complaint against the United States and the Internal Revenue Service, seeking

recovery of fuel tax of $647,494.00, plus interest for quarterly tax periods ending March 31, 1999, and June 30, 1999. Ammex based its claims on the Export Clause of the United States Constitution, art. I, § 9, cl. 5, and I.R.C. §§ 4221, 6421, and 6427.

On November 19, 2001, Ammex filed a motion for summary judgment. On November 20, 2001, the Government filed its own motion for summary judgment. The district court heard the cross-motions for summary judgment on February 7, 2002. On July 31, 2002, the district court granted the Government's motion for summary judgment and denied Ammex's, holding that Ammex lacked standing to seek a refund of fuel taxes because it could not establish "an injury in fact caused by defendant." The court did not reach the merits of the Export Clause claim. Judgment was entered on August 1, 2002.

On August 14, 2002, Ammex filed a motion for reconsideration; the motion was denied by the district court on October 22, 2002. The instant appeal followed.

## II.  STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo.  See Upsher v. Grosse Pointe Public School System,* 285 F.3d 448, 451, (6th Cir. 2002). The constitutional and statutory interpretation issues presented in this case are questions of law, also subject to *de novo* review. *See Johnson v. Economic Dev. Corp.,* 241 F.3d 501, 509 (6th Cir. 2001).

## III.  DISCUSSION

### A.   Standing under the Export Clause

The "case or controversy" limitation of Article III of the Constitution requires that "a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the Court." *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 41-42 (1976). The district court's conclusion that Ammex had no standing was based, in part, upon the fact that it was not the Government that collected the tax from Plaintiff, but rather Plaintiff's suppliers. In other words, it was the action of a third party (the suppliers), as opposed to the Defendant (the Government), that caused Plaintiff's alleged injury.

In order to satisfy the standing requirements imposed by Article III of the United States Constitution,

A plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury.

*Coyne v. American Tobacco Company,* 183 F.3d 488, 494 (6th Cir. 1999) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473 (1982)). Plaintiff claims that (1) it suffered an economic injury in fact by the Government's imposition of the challenged excise tax, (2) since the Government imposed this tax, its injury is fairly traceable to the Government, and (3) by reimbursing Ammex for the taxes paid, its injury will be redressed.

Although the Government did impose an excise tax on the fuel that Ammex purchased and later sold at its "duty-free

facility," that tax was not assessed against Ammex. Instead, the tax was imposed on Ammex's suppliers who, in turn, added the amount of the tax to the wholesale price of the fuel Ammex purchased.[1]  As noted by the district court, "The tax burden at issue here is that of Ammex's suppliers, and not Ammex."  Therefore, Ammex did not pay the challenged excise tax to the Government (nor was such a tax assessed against it), but instead paid a tax-included price to its suppliers.  It was in the discretion of Ammex's suppliers to charge Ammex for the challenged tax amount. Consequently, any alleged injury suffered by Plaintiff in the form of increased fuel costs was not occasioned by the Government.

It is difficult to see how, "[i]f the defendant did not lay, assess, exact, or otherwise collect from plaintiff any federal excise taxes on the gasoline and diesel fuel during the periods at issue...," Plaintiff can proceed under this theory. *Ammex Inc. v. United States,* No. 99-338T (Court of Federal Claims, April 10, 2002) at p. 12.  Without an injury-in-fact, caused by the Government, we hold that Ammex does not have standing to pursue its claim based on the Export Clause.

**B.  Fuel Sold "For Export"**

26 U.S.C. § 6421(c) provides that if gasoline is sold to any person for certain exempt purposes set forth in § 4221(a)(2)-(5), such person is to be paid an amount equal to the tax without interest.  As relevant here, § 4221(a)(2) lists as an exempt purpose, a sale "for export, or for resale by the purchaser to a second purchaser for export."  The district court determined that Ammex was not entitled to recover payments under § 6421(c) because, according to longstanding

---

[1]The tax was imposed on Ammex's suppliers pursuant to 26 U.S.C. § 4081(a)(1)(A)(ii) because it was the suppliers that removed taxable fuel from the terminal.

administrative practice,[2] the fuel sold by Ammex was not sold for export within the meaning of the statute.

Because the excise tax provisions of the Code do not define "export," extrinsic aids for construction may be relied on in interpreting the meaning of export for purposes of § 6421(c) and § 4221(a)(2).  For more than 30 years, the IRS has taken the position that delivery of fuel into the fuel supply tank of a motor vehicle is use of that fuel, and that the subsequent movement of the vehicle into a foreign country does not constitute exportation of that fuel for purposes of motor fuel excise taxes.  Revenue Ruling 69-150.

Whether or not *Chevron* deference is appropriately applied here, obviously some level of deference to the agency ruling is due.  As the Supreme Court pointed out in *United States v. Mead Corp.,* 533 U.S. 218, 234 (2001), even though an agency's interpretation is not entitled to Chevron deference, such an interpretation may merit some deference whatever its form, given the specialized experience, broader investigations and information available to the agency, and given the value of uniformity in its administrative and judicial understandings of what national law requires.  Indeed, the Court in *Mead* reaffirmed the holding of *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944), that "[t]he weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Mead,* 533 U.S. at 228 (quoting *Skidmore,* 323 U.S at 140).

---

[2]The district court partially relied on Revenue Ruling 69-150, specifically holding that it was entitled to *Chevron* deference.  While *Chevron* deference may not be the appropriate level of deference to which revenue rulings are entitled, Ruling 69-150 is a long-standing and highly persuasive precedent.  Reasonable agency interpretations carry "at least some added persuasive force" where *Chevron* is inapplicable. *Metropolitan Stevedore Co. v. Rambo,* 521 U.S. 121, 136 (1997).

Consideration of the above factors dictates that at least some level of deference is due Revenue Ruling 69-150.[3] Revenue rulings are written and reviewed at the same level of the IRS and the Treasury Department as are Treasury regulations, demonstrating that a "central board or office" accords a great "degree of ...care" to their issuance. *Mead,* 533 U.S. at 228, 236. Of course, the IRS possesses "relative expertness" in the application of the Code to particular facts, given the technical complexity of federal tax law. *See id.* Additionally, the fact that the IRS has left Revenue Ruling 69-159 virtually unchanged for over three decades demonstrates the soundness of the decision there made. Finally, Ammex has failed to identify any infirmity in this longstanding and sensible interpretation of the statutory scheme.

Given the logical and long-standing agency interpretation of a statue by the department charged with its administration, we believe Revenue Ruling 69-150 has the power to persuade and should be followed in a case such as this. Hence, we conclude that the district court did not err in holding that the fuel sold by Ammex was not "for export" within the meaning of § 4221(a)(2) and § 6421(c).

## C.   Ammex as an "Exporter"

I.R.C. § 6416(c) allows an exporter of motor fuel to recover an illegally collected tax.   The district court found that Ammex, a duty-free sales enterprise, was not an exporter but, instead a retailer that facilitated exportation by the individual

---

[3]In *Aeroquip-Vickers*, this Court reversed the Tax Court's failure to defer to a revenue ruling, holding that the Tax Court had "mischaracterized the degree of deference accorded to revenue rulings..." *Aeroquip-Vickers, Inc. Commissioner,* No. 01-2741 (Oct. 20, 2003). This Court stated that the revenue ruling at issue was not entitled to *Chevron* deference. *Id.* However, by examining the factors set out in *Skidmore,* the Court concluded that "some deference to Revenue Rul[ing] 82-20 is proper." *Id.* at 14.

retail customers who departed the country.  Ammex submits that its status as a "duty-free sales enterprise" means that, although it is not a carrier of fuel into Canada, it must be considered an "exporter" because its "sole business is arranging for merchandise to be sent to Canada by selling it for assured exportation."

The definition of "duty-free sales enterprise" demonstrates that Ammex is not an exporter.  Congress has defined a "duty-free sales enterprise" to mean "a person that sells, for use outside the customs territory, duty-free merchandise that is delivered from a bonded warehouse to an airport or other exit point for exportation by, or on behalf of, individuals departing the customs territory." 19 U.S.C § 1555(b)(8)(D); see also 19 C.F.R. § 19.35(a) ("A class 9 warehouse (duty-free store) may be established for exportation of conditionally duty-free merchandise by individuals...").

According to the definition, a duty-free store does not itself export, but rather sells duty-free goods for export *by someone else* (i.e., a customer).  Thus, Ammex's assertion that it is an "exporter" is belied by the definition itself.  The district court correctly held that Ammex was not an "exporter" under 26 U.S.C. § 6416(c).

## D.   Constitutionality of I.R.C. § 4081

Because Ammex lacks standing to raise the Export Clause claim, this Court need not decide whether § 4081 is unconstitutional with respect to fuel sold to a duty-free enterprise.

### IV.  CONCLUSION

For the above mentioned reasons, we **AFFIRM** the judgment of the district court.

---

**CONCURRENCE**

---

MERRITT, Circuit Judge, concurring. Although I agree with the result reached in the majority opinion, I have serious doubts about the conclusion that Ammex does not have standing to bring this claim under the Export Clause of the Constitution. It seems to me that for the purposes of standing, Ammex alleges an injury that is fairly traceable to the Government. The fact that Ammex paid the tax to the wholesaler rather than to the Government does not mean that the higher price it paid cannot be easily traced to the Government's imposition of the tax for the purposes of standing. If the gas were sold by Ammex in a separate container and not mixed with the gas in the purchaser's tank before entry into Canada, it would presumably count as an "export" and there would be no question that Ammex has standing. I do not think that standing should turn on issues that go to the merits of the claim like the question of whether the gas is mixed in the fuel tank or sold in a separate container. Moreover, I do not understand how we can reach the merits of the statutory claim — implicitly holding that when pursued through that avenue the injury is fairly traceable to the Government — yet hold that Article III's standing requirements prevent us from hearing a constitutional claim for the same injury caused in exactly the same way. This seems a distinction without a difference that should not encumber the constitutional law of standing to litigate.

As for the merits of the Constitutional claim, I would interpret the meaning of "export" in the Constitution the same way the majority interprets it for the statutory claim, and uphold the judgment on those grounds. Ammex is not an "exporter" under the Constitution anymore than it is under the statute. When it pours gas into the tank of a car, mixing it with what is there, it is no more of an exporter than the gas station which does the same thing a few blocks before reaching the bridge.