**AMMEX, INC., Plaintiff–Appellant,**

**v.**

**UNITED STATES, Defendant–Appellee.**

No. 03–5107.

United States Court of Appeals,
Federal Circuit.

Sept. 27, 2004.

See also 367 F.3d 530.

Craig L. John, Dykema Gossett PLLC, of Bloomfield Hills, MI, argued for plaintiff-appellant. With him on the brief was Mark H. Sutton. Of counsel were Christopher S. Olson, of Bloomfield Hills, MI, and Hardy Vieux, of Washington, DC.

Teresa E. McLaughlin, Attorney, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Eileen J. O'Connor, Assistant Attorney General; and Judith A. Hagley, Attorney.

Stephen J. Marzen, Shearman & Sterling LLP, of Washington, DC, for amicus curiae Ontario Power Generation Inc. Of counsel on the brief was Richard J. Gagnon, Jr.

Before MAYER, Chief Judge, SCHALL and DYK, Circuit Judges.

MAYER, Chief Judge.

Ammex, Inc. ("Ammex") appeals the judgment of the United States Court of Federal Claims, which held that Ammex lacks standing to pursue a claim under either the Export Clause or 26 U.S.C. § 6416(c), *Ammex, Inc. v. United States*, 52 Fed.Cl. 303 (April 10, 2002) ("*Ammex I*"), and, after a trial, that Ammex failed to prove that it had not passed-on the tax to its customers as required to establish a 26 U.S.C. § 6421(c) claim, *Ammex, Inc. v. United States*, 56 Fed.Cl. 1 (March 26, 2003) ("*Ammex II*"). Because the United States Court of Appeals for the Sixth Circuit has decided the precise issues involved in this appeal, Ammex is collaterally estopped. As a result, we affirm-in-part and reverse-in-part.

## Background

Ammex owns a retail store in Detroit, Michigan, located beyond the United States Customs exit point, which means that no one entering the facility may return to the United States without first crossing the Ambassador Bridge into Canada. Such a facility is commonly referred to as "sterile." Many of the products stocked by Ammex, such as liquors, cigarettes, watches, and perfumes, are sold duty-free. Ammex does not, however, have the approval of the United States Customs Service to sell its gasoline duty-free. During the relevant time period, April 1994 through December 1998, Ammex purchased gasoline from various suppliers. These transactions shared several noteworthy characteristics: (1) the United States levied a tax on each sale pursuant to 26 U.S.C. § 4081; (2) the tax was levied when the fuel was removed from the suppliers' "terminal racks," or holding facility; (3) the suppliers paid the tax directly to the government; and (4) the suppliers included an amount equal to the tax in the price paid by Ammex.

Based on these facts, Ammex makes three claims, each of which asserts that Ammex is entitled to a refund of the more than six million dollars collected by the United States from Ammex's suppliers. First, Ammex contends that the tax was imposed in violation of the Export Clause of the Constitution of the United States, art. I, § 9, cl. 5. According to this theory, the gas was exported by Ammex's customers when they drove their fuel laden cars into Canada. Therefore, as an export, the gasoline was immune from all taxation, and Ammex, which effectively paid the tax, is entitled to a refund.

Second, Ammex claims that it is entitled to a refund pursuant to 26 U.S.C. §§ 6421(c) and 4221(a). Section 6421(c) states, "If gasoline is sold to any person for any purpose described in paragraph (2) ... of section 4221(a), the Secretary shall pay (without interest) to such person an amount equal to the product of the number of gallons of gasoline so sold multiplied by the rate at which tax was imposed on such gasoline by section 4081." Section 4221(a)(2) exempts a sale when the gasoline is exported by the purchaser or resold by the purchaser to a "second purchaser for export." Ammex asserts that it is entitled to a refund because it purchased the fuel and sold it to its customers who then exported the fuel in their individual automobiles.

Third, Ammex argues that it is entitled to a refund pursuant to 26 U.S.C. § 6416(c), which states, "Under regulations prescribed by the Secretary the amount of any tax imposed by chapter 31, or chapter 32 erroneously or illegally collected in respect of any article exported to

a foreign country or shipped to a possession of the United States may be refunded to the exporter or shipper thereof, if the person who paid such tax waives his claim to such amount." Ammex reasons that it should be classified as an "exporter or shipper" because it actually exported the fuel by taking it to its sterile facility or because it facilitated the exportation of the fuel by its customers.

Ammex also filed suit in the United States District Court for the Eastern District of Michigan, which has concurrent jurisdiction over tax refund cases with the Court of Federal Claims pursuant to 28 U.S.C. § 1346(a)(1), claiming that it was entitled to a refund for the 1999 and 2000 tax years. Aside from the different tax years at issue, the two cases are factually identical, and Ammex argued the same three legal theories in both courts.

In response to Ammex's claims in both cases, the government argued that Ammex lacked standing under the Export Clause because it did not pay the tax directly to the government, or, in the alternative, that the tax does not violate the Export Clause because it was levied prior to the fuel entering the stream of exportation. *See, e.g., Kosydar v. Nat'l Cash Register Co.,* 417 U.S. 62, 68, 94 S.Ct. 2108, 40 L.Ed.2d 660 (1974) (holding that Import–Export clause did not exempt packaged cash registers from a state personal property tax because the merchandise had not entered the stream of exportation). With respect to Ammex's revenue code claims, the government asserted that the fuel was never exported, that Ammex is not an "exporter or shipper," and that Ammex passed-on the tax to its customers thus precluding any recovery.

On cross-motions for summary judgment, the Court of Federal Claims held that Ammex lacked standing under the Export Clause because it had not paid the tax directly to the government. *Ammex I,* 52 Fed.Cl. at 310 ("The mere fact that Ammex may have borne the economic burden of the tax does not mean that it literally paid the tax."). The court also held that Ammex was not a "shipper or exporter," but, rather, that Ammex's customers were responsible for exporting the gasoline. *Id.* at 312–13. As such, Ammex could not pursue relief under section 6416(c). The court did find, however, that the fuel was exported and, as a result, that Ammex had standing to pursue a claim under sections 6421(c) and 4221(a)(2). *Id.* at 311–12. After a trial, the Court of Federal Claims decided that Ammex had not met its burden of proof that it had not passed the tax through to its customers, and denied any recovery pursuant to sections 6421(c) and 4221(a)(2). *Ammex II,* 56 Fed.Cl. at 14.

The outcome in the Eastern District of Michigan was similar. On summary judgment, the court held that Ammex did not have standing under the Export Clause because it had not paid the tax directly to the government, *Ammex, Inc. v. United States,* No. 00–CV–73388, 2002 WL 32065583, at *6–7 (E.D.Mich. July 31, 2002), that Ammex was not an "exporter or shipper" pursuant to section 6416(c), *id.* at *7–8, and that the gasoline was never exported as required by sections 6421(c) and 4221(a)(2), *id.* at *10.

Both trial court decisions were appealed, the Court of Federal Claims decision to our court and the district court decision to the Sixth Circuit. The Sixth Circuit affirmed the district court in *Ammex, Inc. v. United States,* 367 F.3d 530 (6th Cir.2004). It held that "[i]t was in the discretion of Ammex's suppliers to charge Ammex for the challenged tax amount. Consequently,

any alleged injury suffered by Plaintiff in the form of increased fuel costs was not occasioned by the Government." *Id.* at 534. The court concluded that Ammex lacked standing to pursue its Export Clause claim, that "the fuel sold by Ammex was not 'for export' within the meaning of § 4221(a)(2) and § 6421(c)," *id.* at 534–35, and that Ammex was not an exporter or shipper, *id.* at 535.

## Discussion

We exercise jurisdiction pursuant to 28 U.S.C. § 1295(a)(3). We review the Court of Federal Claims decision granting summary judgment *de novo.* *Bailey v. United States,* 341 F.3d 1342, 1345 (Fed.Cir.2003).

■ Whether collateral estoppel applies depends on whether: (1) the issues decided in the Sixth Circuit are identical to those before us; (2) those issues were actually litigated in the prior proceeding; (3) the Sixth Circuit's resolution of those issues was necessary to its resulting judgment; and (4) Ammex was afforded a full and fair opportunity to litigate its position. *See Mintzmyer v. Dep't of the Interior,* 84 F.3d 419, 423 (Fed.Cir.1996); *see also Dana v. E.S. Originals, Inc.,* 342 F.3d 1320, 1323 (Fed.Cir.2003); *Arkla, Inc. v. United States,* 37 F.3d 621, 624 (Fed.Cir. 1994).

■ To begin with, the issues presented to us on appeal are identical to those in the Sixth Circuit except for the difference in tax year. Both cases involve Ammex's claim that it is entitled to the refund of taxes collected from its fuel suppliers pursuant to section 4081. In both cases, Ammex argued that the taxes violated the Export Clause or that sections 6416(c), 6421(c) and 4221(a)(2) entitled it to a refund. That the tax years at issue differ is irrelevant. As explained in *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 598–99, 68 S.Ct. 715, 92 L.Ed. 898 (1948):

> Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. Collateral estoppel operates, in other words, to relieve the government and the taxpayer of "redundant litigation of the identical question of the statute's application to the taxpayer's status."

(citation omitted); *see also Furst v. United States,* 230 Ct.Cl. 375, 678 F.2d 147, 154 (1982) ("Collateral estoppel will bar the relitigation of any matters in a second proceeding concerning a second taxable year that were actually presented and determined in the first suit."). Thus, aside from tax years, the circumstances in the two cases are factually identical, and there have been no intervening changes in the applicable law. *See Montana v. United States,* 440 U.S. 147, 157, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (collateral estoppel applies to identical cases so long as there have been no significant doctrinal changes).

It is likewise clear that Ammex and the government actually litigated the Export Clause and code section issues, and that

the Sixth Circuit's resolution of these issues was necessary to its judgment. With respect to Ammex's constitutional claim, the Sixth Circuit held that "Ammex does not have standing to pursue its claim based on the Export Clause." *Ammex,* 367 F.3d at 534. As to Ammex's code claims, the Sixth Circuit said, "we conclude that the district court did not err in holding that the fuel sold by Ammex was not 'for export' within the meaning of § 4221(a)(2) and § 6421(c)." *Id.* at 534–35. Finally, the Sixth Circuit directly held that "a duty-free store does not itself export, but rather sells duty-free goods for export *by someone else* (i.e., a customer). Thus, Ammex's assertion that it is an 'exporter' is belied by the definition itself." *Id.* at 536. These statements could not more definitively illustrate that the Sixth Circuit was confronted with and directly resolved the same issues presented to us. *See Arkla,* 37 F.3d at 624 (applying collateral estoppel where the Fifth Circuit had previously decided whether recoverable cushion gas was depreciable property). Finally, Ammex had a full and fair opportunity to litigate this case in the Eastern District of Michigan and the Sixth Circuit.

As a result, Ammex is precluded from asserting that it has standing under the Export Clause or that it is entitled to a refund under the asserted revenue code sections. Otherwise the victorious party would be required to relitigate the same issue again and again with respect to each successive tax year. *See United States v. Stauffer Chem. Co.,* 464 U.S. 165, 171, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984) (applying collateral estoppel where plaintiff prevailed in an earlier suit regarding whether private contractors are "authorized representatives" pursuant to 42 U.S.C.A. § 7414(a)(2)). This would unnecessarily burden the government, private litigants and the judiciary, as well as cause untold confusion. *See Montana,* 440 U.S. at 153–54, 99 S.Ct. 970.

### Conclusion

Accordingly, the judgment of the Court of Federal Claims that Ammex lacks standing under the Export clause and section 6416(c) is affirmed, and its judgment that Ammex had standing pursuant to sections 6421(c) and 4221(a)(2) because the fuel was exported is reversed.

*NO COSTS.*

*AFFIRMED–IN–PART AND REVERSED–IN–PART.*