NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**FOX LOGISTICS AND CONSTRUCTION CO.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2024-2150

_____

Appeal from the United States Court of Federal Claims in No. 1:18-cv-01395-EHM, Judge Edward H. Meyers.

_____

Decided:  June 3, 2026

_____

HAL EMALFARB, Emalfarb Law LLC, Northbrook, IL, argued for plaintiff-appellant.

STEVEN JOHN GILLINGHAM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY, BRETT SHUMATE.

_____

Before MOORE, *Chief Judge*, PROST, *Circuit Judge*, and SEEBORG, *Chief District Judge*.[1]

PROST, *Circuit Judge*.

Fox Logistics and Construction Co. ("Fox") appeals a decision of the U.S. Court of Federal Claims ("Claims Court") granting summary judgment for the United States. For the reasons below, we affirm.

## BACKGROUND

This appeal arises from a subcontractor's attempts to secure payment from the United States. In August 2012, the U.S. Air Force awarded Lakeshore Engineering Services, Inc. ("Lakeshore") Task Order No. 42 under Federal Prime Contract #FA8903-06-D-8505 for the expansion of the Shindand Air Base in Afghanistan. J.A. 2–3, 2682. In October 2012, Lakeshore awarded Fox a subcontract in support of that task order. J.A. 3. The arrangement quickly soured—within months of awarding Fox the subcontract, Lakeshore began failing to make timely payments. J.A. 3.

A series of show-cause notices and warnings to Lakeshore from the Air Force ensued. J.A. 3–9. These communications came to a head on January 7, 2014, when the Air Force issued another show-cause notice to Lakeshore. J.A. 2074–76. The notice informed Lakeshore that the Air Force considered Lakeshore's "nonpayment to subcontractors to be endangering performance under" the task order and explained that "the non-payment and resulting impacts are cause for reconsideration" of termination under the task order's provisions for default. J.A. 2074. It further directed Lakeshore to "provide the

---

[1]    Honorable Richard Seeborg, Chief District Judge, United States District Court for the Northern District of California, sitting by designation.

[g]overnment with a corrective action plan to prevent continual financial issues from affecting future performance and completion of the project." J.A. 2076. In response, Lakeshore proposed that it would deposit future payments on task orders into a designated holding account. J.A. 6, 2082–90. In a February 7, 2014 letter to Lakeshore ("the February 2014 agreement"), the Air Force contracting officer agreed to use of the holding account and instructed Lakeshore to include subcontractor payment certifications with future invoices for payments and pay a subcontractor immediately upon receipt of payment. J.A. 2096. The contracting officer advised that the Air Force would monitor transactions from the holding account—if transactions did not occur in accordance with the approved subcontractor payment certification, the task order would be immediately terminated for default. J.A. 2097.

On February 14, 2014, Lakeshore and Fox signed the final version of the Lakeshore-Fox payment plan. J.A. 2173. The plan specified that Lakeshore was to pay Fox for the amounts on Lakeshore's submitted invoices. J.A. 2172. It also specified that the Air Force would have "full access viewing rights to monitor all proceeds." J.A. 2172. Under the plan, Lakeshore submitted four invoices to the Air Force. J.A. 19. For each invoice, payment was made by the Air Force to Lakeshore, and by Lakeshore to Fox. J.A. 19–20.

On or about May 1, 2014, Lakeshore abandoned Task Order No. 42 and its other projects in Afghanistan. J.A. 9. On May 2, 2014, the Air Force contracting officer emailed Lakeshore, directing the company to ensure that its subcontractors discontinue performing work, including under Task Order No. 42. J.A. 2102. Lakeshore filed a Chapter 7 bankruptcy petition. J.A. 9. Fox contends that Lakeshore owed it "more than $3,000,000" at the time Lakeshore declared bankruptcy and that it incurred over $8,000,000 in uncompensated expenses. Appellant's Br. 21; J.A. 9. Fox alleges it "unsuccessfully" attempted to

recover those funds during Lakeshore's bankruptcy proceedings. Appellant's Br. 21. Fox further alleges it subsequently filed a certified claim with the Air Force, which was denied. Appellant's Br. 21; J.A. 9.

Fox filed its complaint with the Claims Court in September 2018. J.A. 9. The complaint alleged that Fox had an implied-in-fact contract with the Air Force, was a third-party beneficiary to the Air Force's contract with Lakeshore, and that the Air Force had breached its implied duties of good faith and fair dealing. J.A. 41–49. The Claims Court ordered jurisdictional discovery and fact discovery following the government's (ultimately withdrawn) motion to dismiss. *See Fox Logistics & Constr. Co. v. United States*, 145 Fed. Cl. 236, 239–43 (2019); J.A. 9–10. Both parties filed motions for summary judgment. J.A. 10. In May 2024, the Claims Court granted the government's motion for summary judgment, concluding that: (1) no implied-in-fact contract existed between Fox and the Air Force; (2) Fox was not a third-party beneficiary of Lakeshore's February 2014 agreement with the Air Force; and (3) even if Fox were a third-party beneficiary of Lakeshore's February 2014 agreement with the Air Force, that the Air Force had not breached that agreement. J.A. 11–19.

Fox timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We affirm a grant of summary judgment "when the record, examined in the light most favorable to the non-movant, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *G4S Tech. LLC v. United States*, 779 F.3d 1337, 1340 (Fed. Cir. 2015) (cleaned up). We review the Claims Court's grant of summary judgment de novo and draw all justifiable factual inferences in favor of

Fox.  *See Ammex, Inc. v. United States*, 384 F.3d 1368, 1371 (Fed. Cir. 2004).

On appeal, Fox argues that the Claims Court erred in granting summary judgment to the government because (1) it was a third-party beneficiary to the Air Force's February 2014 agreement with Lakeshore and (2) a genuine dispute of material fact exists as to whether the Air Force breached that agreement.  Appellant's Br. 22, 46.  We need not reach whether Fox established third-party-beneficiary status, because even if it did, it would still have to show a breach.  *See Sullivan v. United States*, 625 F.3d 1378, 1380 (Fed. Cir. 2010).  And, because we conclude that the Claims Court properly determined that no genuine dispute of material fact exists as to the alleged breach of the February 2014 agreement, we affirm the Claims Court's grant of summary judgment.

To determine whether there was a breach, we must know what the February 2014 agreement required.  "Contract interpretation begins with the language of the written agreement."  *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004).  The February 2014 agreement between the Air Force and Lakeshore is clear.  It sets forth in relevant part that Lakeshore "may resume submitting invoices for payment provided that [Lakeshore] continue[s] to submit sub-contractor payment certifications, and that all payments are made in accordance with that certification immediately upon receipt of funds from the government."  J.A. 2096.  The agreement further required Lakeshore to submit "an agreed upon payment plan with sub-contractors currently in arrears."  J.A. 2096.  Finally, it specified that, "[o]nce invoices are approved and disbursed to" Lakeshore, the government "will monitor transactions from the designated holding account.  If at any time, transactions do not occur in accordance with the approved sub-contractor payment certification[,] this task order will be immediately terminated for default."  J.A. 2097.  Importantly, the agreement focuses on Lakeshore's obligations.

Fox does not anchor its arguments regarding breach in the language of the agreement. Instead, to support its position that a genuine dispute of material fact exists regarding whether the Air Force breached the contract, Fox offers what it believes to be the Claims Court's "acknowledge[ment]" of a dispute of fact: that "[i]f Lakeshore still owes Fox money for work performed under their subcontract, that is an issue for the bankruptcy court, not this one." Appellant's Br. 47 (citing J.A. 20). We disagree with Fox's interpretation of the Claims Court's statement. A comment on what Lakeshore may owe Fox is separate from the question ultimately relevant to this case: whether the *Air Force* breached. Fox thus failed to raise a material factual dispute.

Fox goes on to assert that the Air Force breached by "neglect[ing] to fund the special account as promised." Appellant's Br. 49. But Fox fails to substantiate this assertion. The implication of Fox's position appears to be that the Air Force should have funded the special account even in the absence of submitted invoices from Lakeshore. *See* Appellee's Br. 31. But Fox does not provide evidentiary support indicating that the Air Force agreed to such an obligation.

The evidence on the record before us instead demonstrates that Lakeshore submitted four invoices to the Air Force following the February 2014 agreement.[2] J.A. 9;

---

[2]    At oral argument, Fox was given an opportunity to supplement the record before this court, with the government's consent, if there exists evidence within the record below of invoices that the government refused to pay. Oral Arg. at 30:23–56, No. 24-2150, https://www.cafc.uscourts.gov/oral-arguments/24-2150_04072026.mp3. Following several non-compliant filings (ECF Nos. 52, 53, 56) and orders from this court for correction (ECF Nos. 55, 57, 58), Fox filed its most recent motion for leave to file a

Appellant's Br. 20.  The Air Force processed those four invoices and paid Lakeshore the invoiced total.  J.A. 9.  Fox received all four corresponding payments.  J.A. 9, 20; Appellant's Br. 20.  The fact that *Lakeshore* then fell behind on payments to Fox and subsequently declared bankruptcy does not turn *Lakeshore's* failure to pay its subcontractor into the Air Force's nonperformance.  *See Sullivan*, 625 F.3d at 1380–81.  Fox does not—and indeed, it cannot—point to any obligation in the February 2014 agreement that the Air Force failed to perform.  Instead, the record is clear that the Air Force did what it agreed to do: pay the invoices submitted to it by Lakeshore.  J.A. 19–20.  And when Lakeshore failed to make payments to its subcontractors, the Air Force again did what it said it would do in the February 2014 agreement: terminate for default.  J.A. 2097, 2102.  Thus, the Claims Court properly granted the government's summary judgment motion, as Fox failed to raise a genuine dispute of material fact that the Air Force breached.

## CONCLUSION

We have considered Fox's remaining arguments and find them unpersuasive.  For the foregoing reasons, we affirm the Claims Court's grant of the government's motion for summary judgment.

## AFFIRMED

---

supplemental appendix (ECF Nos. 59, 60) and what appears to be a motion for leave to file the supplemental appendix out of time (ECF No. 61).  The court grants Fox's motions (ECF Nos. 59, 60, 61).  We have reviewed Fox's supplemental appendix and conclude that the contents therein do not furnish evidence that alters the decision set forth in this opinion.