## *PRELIMINARY PRINT*

# VOLUME 598 U. S. PART 2

### PAGES 449–470

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

MAY 18, 2023

Page Proof Pending Publication

## REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

OHIO ADJUTANT GENERAL'S DEPARTMENT ET AL. *v.*
FEDERAL LABOR RELATIONS AUTHORITY ET AL.

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE SIXTH CIRCUIT

No. 21–1454.  Argued January 9, 2023—Decided May 18, 2023

The Federal Service Labor-Management Relations Statute (FSLMRS)
provides for collective bargaining between federal agencies and their
employees' unions; bars each from committing unfair labor practices;
and establishes the Federal Labor Relations Authority (FLRA) to in-
vestigate and adjudicate labor disputes.  See 5 U. S. C. § 7101 *et seq.*
At issue here, the American Federation of Government Employees,
Local 3970, AFL–CIO is the exclusive representative of certain federal
civil-service employees known as dual-status technicians who work
for the Ohio National Guard.  After their prior collective-bargaining
agreement (CBA) expired, petitioners here—the Ohio National Guard,
the Ohio Adjutant General, and the Ohio Adjutant General's Depart-
ment (collectively the Guard)—asserted that the Guard was not bound
by the FSLMRS when interacting with the Guard's dual-status techni-
cians.  The Union subsequently filed an unfair labor practice complaint
with the FLRA to resolve the dispute.  Pointing to the fact that the
FLRA only has jurisdiction over labor organizations and federal agen-
cies, petitioners argued that the Guard was not an "agency" and that
dual-status technician bargaining-unit employees were not "employees"
for purposes of the FSLMRS.  The Administrative Law Judge issued
a recommended decision finding that: the FLRA had jurisdiction over
the Guard; the dual-status technicians had collective-bargaining rights
under the FSLMRS; and the Guard's actions in repudiating the CBA
violated the FSLMRS.  A divided panel of the FLRA adopted the
ALJ's findings, conclusions, and remedial order.  Petitioners sought re-
view in the Sixth Circuit, which denied relief.

*Held*: The FLRA had jurisdiction over this labor dispute because a State
National Guard acts as a federal agency for purposes of the FSLMRS
when it hires and supervises dual-status technicians serving in their
civilian role.

The question whether petitioners are an "agency" for purposes of the
FSLMRS when they act as supervisors of dual-status technicians is
bounded by a series of defined statutory terms.  5 U. S. C. § 7116(a)(1).
The FSLMRS defines "agency" to include the Department of Defense.
§ 7103(a)(3).  And each dual-status "technician . . . is an employee of

the Department of the Army or the Department of the Air Force." 32 U. S. C. §709(e); see also 10 U. S. C. §10216(a)(1)(A). Those Departments, in turn, are components of the Department of Defense. §§111(b)(6) and (8). Components of covered agencies plainly fall within the reach of the FSLMRS. See 5 U. S. C. §§7103(a)(12), 7112(a). Thus, when petitioners employ dual-status technicians, they—like components of an agency—exercise the authority of the Department of Defense, a covered agency.

The statutory authority permitting the Ohio Adjutant General to employ dual-status technicians as civilian employees in the federal civil service reinforces this point. See 5 U. S. C. §2105(a)(1)(F). Congress has required the Secretaries of the Army and Air Force to "designate" adjutants general "to employ and administer" technicians. 32 U. S. C. §709(d). That designation is the sole basis for petitioners' authority to employ technicians performing work in their federal civilian roles. Here, a 1968 order of the Secretary of the Army "designate[s]" and "empower[s]" each adjutant general "to employ and administer the Army National Guard technicians authorized for his State . . . as the case may be." General Order No. 85, ¶3. Accordingly, dual-status technicians are ultimately employees of the Secretaries of the Army and the Air Force, and petitioners are the Secretaries' designees for purposes of dual-status technician employment. Should a state adjutant general wish to employ federal dual-status technicians, the adjutant general must do so pursuant to delegated federal authority and subject to federal civil-service requirements. See 5 U. S. C. §2105(a)(1)(F).

The evolution of federal agency-employee relations law and the text of §7135(b) lend further support to the FLRA's exercise of authority over the Guard. Section 7135(b) explicitly continues prior practice under the provisions of Executive Order No. 11491—the precursor to the FSLMRS—except where specifically revoked by the President or altered by the FSLMRS or corresponding regulations. The 1971 decision in *Thompson Field* is on point. See Mississippi National Guard, 172d Military Airlift Group (Thompson Field), Asst. Sec. Labor/Management Relations (A/SLMR) No. 20. There, the Assistant Secretary of Labor—exercising adjudicative authority under Executive Order No. 11491 analogous to the FLRA's—held that Mississippi's National Guard technicians were employees of the Federal Government under Executive Order No. 11491. The Assistant Secretary concluded that the State's adjutant general had "been designated as an agent of the Secretaries of the Army and the Air Force" in employing and administering dual-status technicians and that this agency relationship created the obligation to comply with Executive Order No. 11491. *Id.*, at 7. The definitions of "employee" and "agency" that *Thompson Field* examined were

Page Proof Pending Publication

Syllabus

materially identical to those that Congress ultimately adopted in the FSLMRS. The Court thus ordinarily presumes that the FSLMRS maintained the same coverage that existed under the prior regime, see, *e. g.*, *George* v. *McDonough*, 596 U. S. ——, ——, and the Court identifies nothing to weaken that presumption here. Pp. 456–461.

21 F. 4th 401, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SOTOMAYOR, KAGAN, KAVANAUGH, BARRETT, and JACKSON, JJ., joined. ALITO, J., filed a dissenting opinion, in which GORSUCH, J., joined, *post*, p. 461.

*Benjamin M. Flowers*, Solicitor General of Ohio, argued the cause for petitioners. With him on the briefs were *Dave Yost*, Attorney General, and *Michael J. Hendershot*, Chief Deputy Solicitor General.

*Nicole Frazer Reaves* argued the cause for the federal respondent. With her on the brief were *Solicitor General Prelogar, Deputy Solicitor General Fletcher*, and *Rebecca J. Osborne*. *Andres M. Grajales* argued the cause for respondent American Federation of Government Employees, Local 3970, AFL–CIO. With him on the brief were *Matthew Milledge* and *David A. Borer*.*

---

*Briefs of *amici curiae* urging reversal were filed for the State of Mississippi et al. by *Lynn Fitch*, Attorney General of Mississippi, *Scott G. Stewart*, Solicitor General, and *Justin L. Matheny* and *Anthony M. Shults*, Deputy Solicitors General, and by the Attorneys General for their respective States as follows: *Steve Marshall* of Alabama, *Treg Taylor* of Alaska, *Leslie Rutledge* of Arkansas, *Jeff Landry* of Louisiana, *Austin Knudsen* of Montana, *John M. O'Connor* of Oklahoma, *Mark Vargo* of South Dakota, *Ken Paxton* of Texas, *Sean D. Reyes* of Utah, and *Patrick Morrisey* of West Virginia; for the State of South Carolina by *Alan Wilson*, Attorney General, *Robert D. Cook*, Solicitor General, and *James Emory Smith, Jr.*, Deputy Solicitor General; for the America First Policy Institute by *Craig W. Trainor* and *Pamela Jo Bondi*; and for Americans for Fair Treatment by *David R. Dorey*.

Briefs of *amici curiae* urging affirmance were filed for the American Federation of Labor and Congress of Industrial Organizations et al. by *Harold C. Becker, Andrew Lyubarsky, Bruce Lerner, Ramya Ravindran*, and *Theodore T. Green*; and for Military Law Scholars by *Charles A. Roth-*

JUSTICE THOMAS delivered the opinion of the Court.

This case requires us to determine whether the Federal Labor Relations Authority (FLRA) properly exercised jurisdiction over an unfair labor practices dispute. On one side were the Ohio National Guard, the Ohio Adjutant General, and the Ohio Adjutant General's Department (collectively petitioners or the Guard). On the other was the American Federation of Government Employees, Local 3970, AFL–CIO (Union), which represents federal employees known as dual-status technicians who work in both civilian and military roles for the Guard.

The Union petitioned the FLRA to resolve the dispute. But, under the Federal Service Labor-Management Relations Statute (FSLMRS or Statute), the FLRA only has jurisdiction over labor organizations and federal "agencies"— and petitioners insist that they are neither. 5 U. S. C. § 7101 *et seq.* We hold, however, that petitioners act as a federal "agency" when they hire and supervise dual-status technicians serving in their civilian role.

I

A

Enacted in 1978, the FSLMRS establishes a comprehensive framework governing labor-management relations in federal agencies. It secures the right of "[e]ach employee" "to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal." § 7102. And, it further guarantees that "each employee shall be protected in the exercise of such right." *Ibid.* To that end, the FSLMRS provides for collective bargaining between federal agencies and their employees' unions, and it bars each from committing unfair labor prac-

---

*feld*, *Andrew J. Pincus*, *Paul W. Hughes*, *Michael B. Kimberly*, and *Eugene R. Fidell*, *pro se.*

tices. See §§ 7102(2) and 7116(a)–(b). For example, an agency may not "interfere with, restrain, or coerce any employee in the exercise by the employee of any right under" the Statute; "refuse to consult or negotiate in good faith with a labor organization as required by" the Statute; or "otherwise fail or refuse to comply with any provision of" the Statute. §§ 7116(a)(1), (5), (8).

The Statute creates the FLRA and tasks it with administering this framework, including by investigating and adjudicating labor disputes. § 7105(a)(2)(G); see also §§ 7104 and 7118(a)(1). It provides that the FLRA's general counsel "shall investigate" a charge against "any agency or labor organization" and, if warranted, may issue a complaint calling for a hearing before the FLRA. §§ 7118(a)(1)–(2). The FLRA is then responsible for "conduct[ing] hearings and resolv[ing such] complaints." § 7105(a)(2)(G). If the FLRA determines that an agency or a union has engaged in an unfair labor practice, it "may require" the entity "to cease and desist from violations of [the Statute] and require it to take any remedial action it considers appropriate." § 7105(g)(3).

This case concerns the Statute's application to a unique category of federal civil-service employees: dual-status technicians working for the State National Guards. These "rare bird[s]" occupy both civilian and military roles. *Babcock* v. *Kijakazi*, 595 U. S. ——, —— (2022). They serve as "civilian employee[s]" engaged in "organizing, administering, instructing," "training," or "maintenance and repair of supplies" to assist the National Guard. 10 U. S. C. § 10216(a)(1)(C); see 32 U. S. C. §§ 709(a)(1)–(2); *Babcock*, 595 U. S., at ——. Yet, they must "as a condition of that employment . . . maintain membership in the [National Guard]" and wear a uniform while working. 10 U. S. C. § 10216(a)(1)(B); see 32 U. S. C. §§ 709(b)(2)–(4). Except when participating as National Guard members in part-time drills, training, or active-duty deployment, see 32 U. S. C. §§ 502(a) and 709(g)(2), dual-

status technicians work full time in a civilian capacity and receive federal civil-service pay. See *Babcock*, 595 U. S., at — – —; see also 5 U. S. C. § 2101(a).

Importantly, under the Technicians Act of 1968, each dual-status technician is considered "an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States." 32 U. S. C. § 709(e). While it is state adjutants general who "employ and administer" dual-status technicians working for their respective State National Guard units, they can only do so pursuant to an express "designat[ion]" of authority by the Secretary of the Army or the Secretary of the Air Force. § 709(d); see also Dept. of the Army, S. Resor, Delegation of Authority Under the National Guard Technicians Act of 1968 (General Order No. 85, Dec. 31, 1968) (General Order No. 85) (current order designating the relevant authority).

## B

The parties' collective-bargaining relationship dates back to 1971, when the Guard recognized the Union as the exclusive representative of its dual-status technicians. They have since negotiated a number of collective-bargaining agreements (CBAs), the most recent of which was signed in 2011 and expired in 2014. As the expiration date neared, the Guard and the Union entered into negotiations for a new agreement. During this process, in March 2016, they adopted a memorandum of understanding whereby the Ohio Adjutant General promised to abide by certain practices contained in the expired agreement. But, later that year, the Ohio Adjutant General's Department reversed course. It asserted that it was not bound by the expired CBA and did not consider itself bound by the FSLMRS when interacting with dual-status technicians. The Guard also sent letters to dual-status technician Union members, asking them to submit the requisite forms to permit the deduction of Union dues from their pay. The letters advised that, if the techni-

cians did not promptly submit the forms, the Guard would cancel dues deductions on their behalf. The Guard ultimately terminated dues withholding for 89 technicians.

The Union subsequently filed unfair labor practice charges with the FLRA. After investigating, the FLRA general counsel issued consolidated complaints against the "U. S. Department of Defense, Ohio National Guard," alleging that the Guard had refused to negotiate in good faith and interfered with the exercise of employee rights under the Statute through its treatment of technicians' dues deductions. App. 16. The Ohio Adjutant General and the Ohio Adjutant General's Department intervened on the side of the Ohio National Guard.

Petitioners argued before the Administrative Law Judge that the Guard was not an "agency" and that dual-status technician bargaining-unit employees were not "employees" for purposes of the Statute. The Administrative Law Judge issued a recommended decision finding that the FLRA had jurisdiction over the Guard, that the dual-status technicians had collective-bargaining rights under the Statute, and that the Guard's actions in repudiating the CBA violated the Statute. It thus ordered petitioners to follow the mandatory terms of the 2011 CBA, bargain in good faith going forward, and reinstate Union dues withholding. A divided panel of the FLRA adopted the Administrative Law Judge's findings, conclusions, and remedial order.

The Guard petitioned for review in the U. S. Court of Appeals for the Sixth Circuit, which denied the petition. 21 F. 4th 401 (2021). The Sixth Circuit held that the Guard is an agency subject to the Statute when it operates in its capacity as employer of dual-status technicians. The court further found that dual-status technicians are federal civilian employees with collective-bargaining rights under the Statute. Thus, because the FLRA has authority to enforce those collective-bargaining rights, the court concluded that this dispute fell within its jurisdiction.

We granted certiorari to consider whether the FLRA had jurisdiction over this labor dispute under the Statute. 598 U. S. —— (2022).[1]

## II

Under the FSLMRS, it is "an unfair labor practice for an agency" "to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under" the Statute. 5 U. S. C. § 7116(a)(1). The FLRA's jurisdiction over this unfair labor practices dispute thus turns on whether petitioners are an "agency" for purposes of the Statute when they act in their capacities as supervisors of dual-status technicians, a question bounded by a series of defined terms. The Statute defines an "agency" as "an Executive agency," with exceptions not relevant here. § 7103(a)(3). Then, the term "'Executive agency,'" as used in Title 5, "means an Executive department, a Government corporation, and an independent establishment." § 105. And each of those terms is separately defined: an "Executive departmen[t]" means each of 15 Cabinet-level Departments, including "[t]he Department of Defense," § 101; a "'Government corporation' means a corporation owned or controlled by the Government of the United States," § 103; and an "'independent establishment' means" "an establishment in the executive branch," with exceptions not relevant here, "which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment," § 104(1). It is undisputed that the Guard is neither a "Government corporation" nor an "independent establishment," leaving only "Executive department" at issue.

---

[1] We did not grant certiorari to consider petitioners' additional question presented, which disputed the constitutionality of the FLRA's authority to regulate the labor practices of state militia members who are not employed in the service of the United States. Consequently, we address only the statutory question presented, and our holding is limited to the unique class of federal employees hired and supervised by state adjutants general.

Opinion of the Court

Petitioners work backwards through the links in the statutory chain. They argue that they are not an Executive department because they are not listed among the 15 Cabinet-level Departments specified in § 101. Thus, they claim, they are not an "Executive agency" under § 105 and, accordingly, do not qualify as an "agency" under the Statute. Respondents counter that the components, representatives, and agents of an agency may be required to comply with the Statute. And they emphasize that petitioners exercise federal authority in employing dual-status technicians and must therefore comply with applicable federal law. Respondents have the better of the argument.

A

The Guard, when employing dual-status technicians, functions as an agency covered by the Statute. The Statute defines "'agency'" to include the Department of Defense, one of the enumerated executive Departments in § 101. § 7103(a)(3); see §§ 101 and 105. And, each dual-status "technician . . . is an employee of the Department of the Army or the Department of the Air Force." 32 U. S. C. § 709(e); see also 10 U. S. C. § 10216(a)(1)(A). Those Departments, in turn, are components of the Department of Defense. 10 U. S. C. §§ 111(b)(6) and (8). And, components of covered agencies plainly fall within the Statute's reach. 5 U. S. C. §§ 7103(a)(12) (contemplating collective bargaining between "the representative of an agency" and "the exclusive representative of employees in an appropriate unit in the agency") and 7112(a) (contemplating the establishment of "appropriate" bargaining units "on an agency, plant, installation, functional, or other basis"). Accordingly, when petitioners employ and supervise dual-status technicians, they—like components of an agency—exercise the authority of the Department of Defense, a covered agency.

The statutory authority permitting the Adjutant General to employ dual-status technicians reinforces this point. Ad-

jutants general appoint dual-status technicians as civilian employees in the federal civil service. See 5 U. S. C. §2105(a)(1)(F) (providing that the term "'employee,'" for purposes of Title 5, ordinarily includes "an individual . . . appointed in the [federal] civil service by . . . an adjutant general designated by the Secretary [of the Army or of the Air Force] under section 709[(d)] of title 32"). And, Congress has required the Secretaries of the Army and Air Force to "designate" adjutants general "to employ and administer" technicians. 32 U. S. C. §709(d). That designation is the sole basis for petitioners' authority to employ technicians performing work in their federal civilian roles, confirming that petitioners act on behalf of—and exercise the authority of—a covered federal agency when they supervise dual-status technicians.

Here, for example, a 1968 order of the Secretary of the Army "designate[s]" and "empower[s]" each adjutant general "to employ and administer the Army National Guard technicians authorized for his State . . . as the case may be." General Order No. 85, ¶3. Accordingly, dual-status technicians are ultimately employees of the Secretaries of the Army and the Air Force, and petitioners are the Secretaries' designees for purposes of dual-status technician employment. Should a state adjutant general wish to employ federal dual-status technicians, he must do so pursuant to delegated federal authority and subject to federal civil-service requirements. See 5 U. S. C. §2105(a)(1)(F). Indeed, it would be passing strange if dual-status technicians, who qualify as employees under the Statute, were supervised by an entity not required to safeguard the rights guaranteed employees under the Statute. §§7102 (providing that "each employee shall be protected in the exercise of" his right to join or refrain from joining a labor association) and 7103(a)(2)(A) (defining an "'employee'" as "an individual . . . employed in an agency"). The case caption in this matter reflects the Guard's federal function with respect to hiring dual-status technicians; be-

fore the FLRA, the case proceeded against the "U. S. Department of Defense, Ohio National Guard," with the Adjutant General and the Adjutant General's Department joining the suit later as intervenors.   App. 16.

Petitioners contend that federalism concerns require us to read the Statute to exempt them from the FLRA's jurisdiction.   But, the FLRA enforces the rights and obligations of *federal* civilian employees and their agency employers.   Because adjutants general act on behalf of an agency of the Federal Government with respect to their supervision of civilian technicians, their actions in that capacity do not implicate the balance between federal and state powers.   See 10 U. S. C. § 10216(a); 32 U. S. C. § 709(e).

B

The evolution of federal agency-employee relations law and the text of 5 U. S. C. § 7135(b), which functions as the Statute's saving clause, lend further support to the FLRA's exercise of authority over the Guard.   Before the FSLMRS was adopted, "labor-management relations in the federal sector were governed by a program established" by a series of Executive Orders "under which federal employees had limited rights to engage in" collective bargaining.   *Bureau of Alcohol, Tobacco and Firearms* v. *FLRA*, 464 U. S. 89, 91–92 (1983).   The Statute's immediate predecessor, Executive Order No. 11491, established the precursor to the current FLRA and listed prohibited unfair labor practices for both federal agency management and unions.   See Exec. Order No. 11491, 3 CFR 861 (1966–1970 Comp.).   When Congress later replaced that Executive Order with the FSLMRS, it explicitly continued many aspects of the pre-FSLMRS regime: "Policies, regulations, and procedures established under and decisions issued under Executive Orde[r] 11491 . . . shall remain in full force and effect until revised or revoked by the President, or unless superseded by specific provisions of [the Statute] or by regulations or decisions issued pursu-

ant to [the Statute]." 5 U. S. C. § 7135(b). Thus, "decisions issued under Executive Orde[r] 11491" supply critical guidance regarding the FLRA's jurisdiction today.

One such decision is directly on point. In the 1971 case of Mississippi National Guard, 172d Military Airlift Group (Thompson Field), Asst. Sec. Labor/Management Relations (A/SLMR) No. 20 (*Thompson Field*), the Assistant Secretary of Labor—exercising adjudicative authority under Executive Order No. 11491 analogous to the modern FLRA's—rejected arguments virtually identical to those petitioners advance here. See *id.*, at 2 (describing the state guard's argument "that the provisions of Executive Order 11491 did not apply . . . because the employees involved are under the operational control of the Adjutant General of the State of Mississippi, who is appointed and employed pursuant to State law"). The Assistant Secretary reasoned "that National Guard technicians [were] employees within the meaning of" the Executive Order and "employees of the Federal government" under the Technicians Act. *Id.*, at 6. The Assistant Secretary then concluded that the adjutant general had "been designated as an agent of the Secretaries of the Army and the Air Force" in employing and administering dual-status technicians and that this agency relationship created the obligation to comply with Executive Order No. 11491. *Id.*, at 7.

The definitions of "employee" and "agency" that *Thompson Field* examined under Executive Order No. 11491 were materially identical to those that Congress ultimately adopted in the FSLMRS. Compare 5 U. S. C. §§ 7103(a)(2)–(3) (defining "'employee'" as "an individual . . . employed in an agency," and defining "'agency'" as "an Executive agency," which § 105 in turn defines as an executive department, a Government corporation, and an independent establishment) with Exec. Order No. 11491, §§ 2(a)–(b) (defining "'[e]mployee'" primarily as "an employee of an agency," and defining "'[a]gency'" as "an executive department, a Govern-

ment corporation, and an independent establishment"). We would, therefore, ordinarily presume that the FSLMRS maintained the same coverage that existed under the prior regime. See, *e. g.*, *George* v. *McDonough*, 596 U. S. ——, —— (2022); *Taggart* v. *Lorenzen*, 587 U. S. ——, —— – —— (2019). We see nothing to weaken the force of that presumption here. On the contrary, § 7135(b) specifically demonstrates Congress' intent to leave the prior regime in place except where it was specifically altered. And, because the President has not revoked it and neither the FSLMRS nor associated regulations have repudiated it, the decision in *Thompson Field* "remain[s] in full force and effect." § 7135(b).

\*     \*     \*

We conclude that petitioners are subject to the authority of the FLRA when acting in their capacities as supervisors of dual-status technicians. Each dual-status technician is an employee of the Department of the Army or the Department of the Air Force; those Departments are, in turn, components of the Department of Defense; and the Department of Defense is a covered agency under the Statute. Further, a designation from the Department of the Army is the sole basis for petitioners' authority to employ dual-status technicians. Accordingly, petitioners employ federal dual-status technicians pursuant to delegated federal authority and subject to federal civil-service requirements. The Statute also explicitly incorporates prior practice, including the decision in *Thompson Field*, which further reinforces our conclusion.

The judgment of the Sixth Circuit is affirmed.

*It is so ordered.*

JUSTICE ALITO, with whom JUSTICE GORSUCH joins, dissenting.

Petitioners, the Ohio National Guard, the Ohio Adjutant General, and the Ohio Adjutant General's Department, chal-

lenge the lawfulness of an order of the Federal Labor Relations Authority (FLRA). That order directs petitioners to honor their existing agreement with the union that represents the dual-status civilian technicians who are members of the Ohio National Guard and to bargain in good faith with the union in the future. The Court correctly observes that the FLRA's ability to enter such an order against petitioners "turns on whether petitioners are an 'agency' for purposes of the" Federal Service Labor-Management Relations Statute. *Ante*, at 456; see 5 U. S. C. § 7105(g)(3). But the Court stops short of answering that question, holding instead that petitioners "act as a federal 'agency,'" *ante*, at 452, "exercise the authority of" a covered agency, *ante*, at 457, and even "functio[n] as an agency," *ibid.* Because petitioners are not *actually* federal agencies, a proposition that the Court does not dispute, the FLRA lacks jurisdiction to enter remedial orders against them.

I

These dual-status civilian technicians are indeed strange creatures—"rare bird[s,]" as we called them last Term. *Babcock* v. *Kijakazi*, 595 U. S. ——, —— (2022); *ante*, at 453–454. For that reason, any decision we make here may have odd spillover effects. See, *e. g.*, *Nelson* v. *Geringer*, 295 F. 3d 1082, 1084, 1086 (CA10 2002) (considering a Rev. Stat. § 1979, 42 U. S. C. § 1983 claim, which is available for deprivations of rights under state law, against a state adjutant general); *Singleton* v. *MSPB*, 244 F. 3d 1331, 1336–1337 (CA Fed. 2001) (holding that the Merit Systems Protection Board lacks authority over state adjutants general because they are not federal employees or agencies); *Chaudoin* v. *Atkinson*, 494 F. 2d 1323, 1329 (CA3 1974) (allowing a mandamus action brought by a civilian technician to proceed against a state adjutant general based on the court's authority "'to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff'" (quoting 28 U. S. C. § 1361)). But the consequences of petitioners' the-

ory are not nearly as odd as the majority claims, and a plain reading of the statutory text leads ineluctably to the conclusion that petitioners are not "agenc[ies]" within the meaning of the Federal Service Labor-Management Relations Statute (FSLMRS or Statute).   5 U. S. C. § 7105(g)(3).

A

"[W]e begin by analyzing the statutory language," for "[w]e must enforce plain and unambiguous statutory language according to its terms."   *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U. S. 242, 251 (2010).   The conclusion that petitioners should prevail follows from a straightforward reading of the statute's text.

*First*, the FSLMRS gives the FLRA remedial jurisdiction over an entity if it is "an agency or a labor organization." § 7105(g)(3).   *Second*, petitioners are obviously not labor organizations, and thus the only question before us is whether they are "agenc[ies]."   *Third*, "agency," a defined term in the FSLMRS, means, with certain exceptions not relevant here, "an Executive agency."   § 7103(a)(3).   *Fourth*, an "Executive agency" is defined as "an Executive department, a Government corporation, [or] an independent establishment."   § 105.   *Fifth*, no petitioner is listed among the executive departments in § 101's exhaustive list.   See § 101. Likewise, no petitioner is either a "Government corporation" (*i. e.*, a "corporation owned or controlled by the Government of the United States," § 103(1)) or an independent establishment (*i. e.*, "an establishment in the executive branch," § 104(1)).   Thus, no petitioner is an "agency" within the meaning of the FSLMRS, and that means that the FLRA lacks remedial jurisdiction over petitioners under § 7105(g)(3).

Interpretation of a statute both " 'begins with the statutory text, and ends there as well' " if the text is " 'unambiguous.' " *National Assn. of Mfrs.* v. *Department of Defense*, 583 U. S. 109, 127 (2018).   This simple textual analysis shows that

the FSLMRS's language unambiguously does not allow the FLRA to direct a remedial order to any petitioner. That should be the end of the matter.

## B

Because it is so clear that no petitioner is an "agency," the Court sidesteps the issue. Instead, it rests its decision on three main grounds. It notes: (1) the dual status technicians are federal employees, (2) petitioners "exercise the authority of" a covered agency as components or representatives of that agency, *ante*, at 457, and (3) pre-FSLMRS administrative practice supports the FLRA's exercise of jurisdiction. None of these grounds justifies the conclusion that any of the petitioners is an "agency" subject to the FLRA's remedial authority.

## 1

The Court refers repeatedly to the uncontested proposition that the technicians are federal employees, are subject to federal civil-service requirements, and are employed under federal law. *Ante*, at 454, 457–458, 461. The Court posits that "it would be passing strange if dual-status technicians, who qualify as employees under the Statute, were supervised by an entity not required to safeguard the rights guaranteed employees under the Statute." *Ante*, at 458. But the question on which this case turns is not whether the technicians are federal employees or whether they have civil service or bargaining rights. It is not even whether petitioners are obligated to "safeguard" the technicians' bargaining rights. The question is whether any such obligations can be enforced by means of an order from the FLRA.

In the context of our own remedial authority, we regularly acknowledge many potential impediments to granting a judicial remedy, even to a litigant that might be able to prove that another party has breached its rights. For instance, we might lack subject-matter jurisdiction over a particular claim, see, *e. g.*, *Steel Co.* v. *Citizens for Better Environment*,

523 U. S. 83, 94–95 (1998), or lack personal jurisdiction over a particular defendant, see, *e. g.*, *Daimler AG* v. *Bauman*, 571 U. S. 117, 121–122 (2014). The plaintiff may lack a private right of action, see, *e. g.*, *Alexander* v. *Sandoval*, 532 U. S. 275, 293 (2001), or the defendant may have a valid immunity defense, see, *e. g.*, *Wilson* v. *Layne*, 526 U. S. 603, 605–606 (1999). The fact that litigants with meritorious claims may not be able to obtain a particular remedy from a particular source is not "strange," but perfectly ordinary.

It is no more strange to say in this case that, regardless of whatever rights and duties the parties may have, the particular remedy of an FLRA order is unavailable. "Administrative agencies are creatures of statute," *National Federation of Independent Business* v. *OSHA*, 595 U. S. ——, —— (2022) (*per curiam*), and accordingly "have only those powers given to them by Congress," *West Virginia* v. *EPA*, 597 U. S. ——, —— (2022). If Congress wants the FLRA to have authority to enter an order against any of the petitioners, it must give the FLRA that authority. See *American Power & Light Co.* v. *SEC*, 329 U. S. 90, 112–113 (1946) (contemplating that an agency's remedy may be set aside where it "is unwarranted in law").*

2

Second, the Court reasons that petitioners, in supervising the technicians, "exercise the authority of the Department of Defense, a covered agency." *Ante*, at 457. The Court approvingly relates respondents' argument that, while petitioners may not *be* agencies, "the components, representatives,

––––––––––

*Although an order from the FLRA is not available, several mechanisms exist to remedy breaches of petitioners' obligations. As petitioners concede, the National Guard Bureau may exert its authority via control of funding and recognition of state guards. See Brief for Petitioners 33–34. And the Federal Government could bring a suit against petitioners in an Article III court to enforce the technicians' bargaining rights. See, *e. g.*, *Seminole Tribe of Fla.* v. *Florida*, 517 U. S. 44, 71, n. 14 (1996).

and agents of an agency may be required to comply with the Statute." *Ante*, at 457. The Court does not specify which of these three categories it thinks petitioners fall into. It says only that petitioners are "*like* components of an agency." *Ibid.* (emphasis added). And it finds that they are "like" components of an agency because they supervise the technicians pursuant to a "designat[ion]" from the heads of the Departments of the Army and the Air Force, which are themselves components of the Department of Defense. *Ante*, at 458. Since the Department of Defense is an agency, the Court reasons that the same must be true of petitioners.

The problem with this reasoning is that a "designat[ion]" to exercise the authority of an "agency" does not turn the designee into an agency. Just because A is designated to exercise the authority of B, it does not follow that A is B. Here is an example. If an administrative hearing officer in the Department of the Interior is disqualified from hearing a case, that officer must report that information "to the Secretary of the Interior *or such officer as he may designate*." 43 U. S. C. § 101 (emphasis added). The designated officer does not become the Secretary by virtue of having been designated to carry out a duty or exercise authority that would otherwise rest with the Secretary.

The same is true here. The designation of petitioners by the Departments of the Army and Air Force to perform some of those departments' duties and to exercise some of their authority does not turn petitioners into agencies or necessarily have any effect beyond assigning them those duties and responsibilities. 32 U. S. C. § 709(d).

The Court's related and highly functionalist argument that petitioners must be subject to the FLRA because they "exercise the authority of" an agency in supervising the technicians similarly fails. *Ante*, at 457. One entity may augment the power of another by delegating to it certain authority. See, *e. g.*, *Youngstown Sheet & Tube Co.* v. *Sawyer*, 343 U. S. 579, 635–638 (1952) (Jackson, J., concurring). That

delegation of authority, however, does not turn the latter entity *into* the former one. That petitioners exercise authority that federal agencies would otherwise hold does not make them agencies any more than the President *is* Congress when he exercises authority pursuant to congressional authorization. See *ibid.*

To be sure, the official who makes the designation cannot delegate authority that he or she does not have. If the FSLMRS constrains the Departments of the Army and Air Force in their relationship with the technicians, it stands to reason that those Departments cannot delegate to adjutants general the power to supervise the technicians free from such constraints. As I have explained, though, this case turns not on whether petitioners have obligations to bargain with the technicians, but on whether those obligations may be enforced against petitioners as if they are "agenc[ies]." 5 U. S. C. § 7105(g)(3). And on that score, saying the Departments' designation transforms petitioners into agencies, with all the legal ramifications of that label, is no more sensible than saying the officer the Secretary of the Interior designates to receive disqualification notices becomes, like the Secretary of the Interior, a principal officer of the United States subject to Senate confirmation. U. S. Const., Art. II, § 2.

3

Finally, the Court's reliance on the Statute's "saving clause," § 7135(b), and on the Assistant Secretary of Labor's decision in *Thompson Field*, is both misplaced and unpersuasive on its own terms. See Mississippi National Guard, 172d Military Airlift Group (Thompson Field), Asst. Sec. Labor/Management Relations (A/SLMR) No. 20 (*Thompson Field*).

Section 7135(b) provides that "[p]olicies, regulations, and procedures established under and decisions issued under Executive Orde[r] 11491 . . . shall remain in full force and effect until revised or revoked by the President, or unless superseded by specific provisions of [the Statute] or by regulations

or decisions issued pursuant to [the Statute]." This language merely directs that, absent specific abrogation by the FSLMRS or reconsideration by the appropriate executive officer, prior administrative policies, regulations, and procedures remain just as binding *on the Executive Branch* as they were before the adoption of the FSLMRS. The Court appears to agree, describing the saving clause as having "continued" pre-FSLMRS administrative practice. *Ante*, at 459.

If that is all that the saving clause did, however, I fail to see why it is relevant here. Congress's directive to "continu[e]" existing administrative practices does not evince approval of any particular practice or prevent a court from saying that a particular practice has been unlawful all along. The saving clause "expressly intended to allow both the [FLRA] and the courts to disregard . . . earlier . . . interpretation[s] of the Executive Order" and "did not intend for the [FLRA] or the courts to pay any deference to [such earlier] interpretations." *INS* v. *FLRA*, 855 F. 2d 1454, 1461 (CA9 1988); see also *Department of Air Force* v. *FLRA*, 877 F. 2d 1036, 1041 (CADC 1989) (§ 7135 "was merely intended to prevent the slate from being wiped clean until the [FLRA] and the courts could interpret the [FSLMRS] in a manner consistent with Congress's intent" (internal quotation marks omitted)). Prior agency practice under the "materially identical" language of Executive Order No. 11491 is thus no obstacle to adopting the straightforward reading of "agency" the FSLMRS's text requires. *Ante*, at 460.

Although the majority's historical-practice argument is flawed at the foundation because it misreads § 7135(b), the single administrative decision it cites in support of its argument does not shed much light on the matter at hand anyway. In *Thompson Field*, the Adjutant General of the State of Mississippi raised a number of objections to federal oversight of the technicians, including that the technicians are not federal employees; that Executive Order No. 11491 is categorically "not applicable to the State of Mississippi"; and that

bargaining with a technicians' union would violate Mississippi law. *Thompson Field*, at 3–5.

The Mississippi Adjutant General did not make the argument that his Department is not an "agency" within the meaning of the remedial provision of Executive Order No. 11491.

Moreover, in deciding *Thompson Field*, the Assistant Secretary of Labor relied principally on the fact that dual-status civilian technicians are federal employees and that the protections of Executive Order No. 11491 apply to them. *Id.*, at 6–7. That analysis does not answer the key question whether the Mississippi Adjutant General is an "agency" subject to remedial jurisdiction. And while the Court quotes the Assistant Secretary's remark that the Adjutant General is " 'an agent of the Secretaries of the Army and the Air Force,' " *ante*, at 460, that observation was made in the course of rejecting the Adjutant General's argument that *Mississippi* law did not permit him to bargain with a labor organization. *Thompson Field*, at 7. The Assistant Secretary was not addressing the question whether being an "agent" of those Secretaries rendered the Adjutant General sufficiently "like an agency" to be subject to federal remedial jurisdiction.

A single administrative decision, like a single or even "a smattering of lower court opinions," is ordinarily not especially probative of statutory meaning. *BP p.l.c.* v. *Mayor and City Council of Baltimore*, 593 U. S. ——, —— (2021); see also *George* v. *McDonough*, 596 U. S. ——, —— (2022) (explaining that a "*robust* regulatory backdrop" may "fil[l] in the details" of a statutory scheme (emphasis added)). The saving clause does not render this case an exception. Consequently, a single administrative decision by an Assistant Secretary that does not even address the particular argument petitioners raise in this case offers no reason to resist the conclusion that the Ohio Adjutant General's Department is plainly not a federal agency.

ALITO, J., dissenting

## II

Because no petitioner is an "agency" within the meaning of § 7105(g)(3), I would reverse the judgment of the Sixth Circuit and hold that petitioners fall outside the remedial jurisdiction of the FLRA.  I respectfully dissent from the Court's contrary conclusion.

Page Proof Pending Publication

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

p. 450, line 10 from bottom, "Reports" is replaced with "Relations"
p. 454, line 15, "No." is inserted after "Order"
p. 458, line 20, "No." is inserted after "Order"
p. 460, line 6, "Reports" is replaced with "Relations"
p. 467, line 6 from bottom, "Reports" is replaced with "Relations"